## THE INTERURBAN RAILWAY & TERMINAL COMPANY *v.* THE CITY OF CINCINNATI.

*Bridges — Maintenance and repair — Contract between railway and county commissioners — Territory subsequently annexed to city — Latter cannot enforce contract or recover for repairs, when — Duty of county commissioners — Bridges on state or county roads in cities.*

1. It is the duty of county commissioners to construct and keep in repair necessary bridges in cities and villages on state or county roads of general public utility running into or through such cities or villages.

2. Where a franchise to construct and operate an electric railway on a free turnpike is granted by a board of county commissioners, one of the conditions of which is that the railway company shall "maintain, repair and rebuild, whenever necessary, during the life of this grant, all the bridges and culverts, over the route herein specified upon which it may place and maintain its tracks, at its own cost and expense, and under the direction of the county engineer and county commissioners; the maintenance of said bridges shall include their approaches, abutments and floors, together with the painting of the iron work, and shall be done at such times as the board of county commissioners may deem necessary," the fact that territory embracing a portion of said free turnpike, which in-

cludes a bridge theretofore erected by the commissioners of such county, is duly annexed to a city does not relieve the county commissioners of any duty with reference to the care and maintenance of such bridge nor serve to transfer to the city authorities any of the rights or benefits accruing to the county commissioners under said contract.

3. The city cannot maintain an action to enforce such contract or recover from the railway company or its successors a sum expended by the city in repairing such bridge.

(No. 15056 — Decided May 23, 1916.)

ERROR to the Court of Appeals of Hamilton county.

This action was instituted in the court of common pleas of Hamilton county by the city of Cincinnati against The Interurban Railway & Terminal Company to recover the sum of $1587.05 claimed to have been expended by the city in repairing a bridge over the Little Miami river.

The material averments of the plaintiff's petition are as follows:

"On March 27, 1901, The Cincinnati & Eastern Electric Railway Company, a corporation organized for the purpose of owning and operating an electric railway, obtained from the County Commissioners of Hamilton county, Ohio, a franchise for itself, its successors and assigns, to construct, maintain and operate, for a term of twenty-five (25) years, an electric railway upon a public highway, to-wit: the Columbia and New Richmond Turnpike from the corporation line of the City of Cincinnati, as it then existed, to the boundary line between Hamilton and Clermont counties, upon

certain terms and conditions as therein expressed and stated.

"One of the terms and conditions of said franchise was as follows:

" '9th. The said The Cincinnati and Eastern Electric Railway Company, its successors and assigns, hereby agree as a consideration for this grant and franchise, to maintain, repair and rebuild, whenever necessary, during the life of this grant, all the bridges and culverts, over the route herein specified upon which it may place and maintain its tracks, at its own cost and expense, and under the direction of the County Engineer and County Commissioners; the maintenance of said bridges shall include their approaches, abutments and floors, together with the painting of the iron work, and shall be done at such times as the Board of County Commissioners may deem necessary.'

"Defendant, The Interurban Railway and Terminal Company is a consolidated company and at some time since said March 27, 1901, but prior to the dates hereinafter mentioned, became, by virtue of said consolidation, the assignee, successor and owner of all the rights and privileges and subject to all the agreements and liabilities of the said The Cincinnati and Eastern Electric Railway Company, which was one of the consolidated companies, and in particular became liable for the performance of the agreement of the said The Cincinnati and Eastern Electric Railway Company, as hereinbefore in the express terms of said franchise set forth.

"One of the bridges in the route specified in said franchise was a bridge over the Little Miami River constructed of steel and wood.

"On or about August 28, 1909, certain territory embracing a part of the route specified in said franchise, including said bridge over said Little Miami River, was annexed to and by the City of Cincinnati, under and in accordance with the laws of Ohio, and said City of Cincinnati thereby succeeded to all the rights of the County Commissioners of Hamilton county under the said franchise to that portion of the route then taken and now within the limits of said city by virtue of said annexation, including the right to have said defendant keep said bridge over said Little Miami in repair as in said franchise provided.

"On or about September 1, 1910, said bridge became out of repair and repairs of the same were necessary, and the plaintiff, the City of Cincinnati, successor, by virtue of said annexation, to all the rights of the County Commissioners under said franchise, notified defendant that repairs of said bridge were necessary and should be made as and at the time in said notice stated, but said defendant wholly neglected to make the necessary repairs, or any repairs, and allowed said bridge to be and remain in disrepair, in violation of the franchise agreement as aforesaid, and as a result of the failure of the defendant to make repairs on said bridge, the condition of said bridge grew steadily worse until in June, 1912, the same became dangerous for, and a menace to, public travel thereon in all modes and by all persons other than said elec-

tric railway company, and said defendant still continuing to fail and neglect to maintain and repair and rebuild said bridge, though continuing to use the same, said bridge became a public nuisance in the highway and plaintiff, by its City Engineer, the successor, by virtue of said annexation, to the rights and duties of the County Engineer, under said franchise, notified said defendant on June 27, 1912, to relay an entire new floor on, and to repaint said bridge, and to begin work not later than July 10, 1912, in compliance with the contract with the County Commissioners, as in said franchise contained, and that upon its failing to do so, the plaintiff would itself make said repairs at defendant's costs.

"Upon failure of defendant to comply with said notice and to make said repairs, or any repairs, the plaintiff, in order to abate said nuisance and prevent said bridge from being a dangerous obstruction in the highway and a menace to public travel thereon, and to make said bridge as a part of said highway open, in repair and free from nuisance, laid and constructed new joists and a new floor on said bridge at a cost of $1,587.05, an itemized account of which is hereto attached and marked 'Exhibit A.'

"In January, 1913, plaintiff made demand upon defendant for said sum of $1,587.05, but said defendant has hitherto refused and still refuses to pay said sum or any part thereof."

The common pleas court sustained a general demurrer to the petition and rendered judgment for

The Interurban Railway & Terminal Company. The court of appeals held that the demurrer should have been overruled, and reversed the judgment of the court of common pleas. Plaintiff in error now seeks a reversal of the judgment of the court of appeals.

*Messrs. Dinsmore & Shohl,* for plaintiff in error.

*Mr. Charles A. Groom,* solicitor of Cincinnati, and *Mr. Constant Southworth,* assistant city so-. licitor, for defendant in error.

MATTHIAS, J.  The city of Cincinnati based its action against The Interurban Railway & Terminal Company upon the following terms and conditions of the franchise granted to the predecessor of said company by the commissioners of Hamilton county:

"9th.  The said The Cincinnati and Eastern Electric Railway Company, its successors and assigns, hereby agree as a consideration for this grant and franchise, to maintain, repair and rebuild, whenever necessary, during the life of this grant, all the bridges and culverts, over the route herein specified upon which it may place and maintain its tracks, at its own cost and expense, and under the direction of the County Engineer and County Commissioners; the maintenance of said bridges shall include their approaches, abutments and floors, together with the painting of the iron work, and shall be done at such times as the Board of County Commissioners may deem necessary."

Subsequent to the granting of the franchise by the county commissioners, territory which embraced

a portion of the route described in the franchise, including the bridge over the Little Miami river, was duly annexed to the city of Cincinnati, and it is now claimed that the city of Cincinnati succeeded to the rights of the county commissioners of Hamilton county under the franchise, so far as they apply to the portion of the route described therein which is included in the annexed territory, and that by virtue of such annexation the city acquired the right to enforce the obligation assumed by said company to repair the bridge on the Columbia and New Richmond turnpike, which spans the Little Miami river at a point within the territory so annexed to the city of Cincinnati.

It must be borne in mind, however, that there has been no change whatever in the obligation which the law places upon the county commissioners with respect to the care and maintenance of such bridge. Notwithstanding the annexation to the city of the territory which includes the bridge in question, the duty still remains upon the county commissioners to make repairs of the bridge and when necessary or advisable to construct a new bridge in its place.

The provisions of Section 2421, General Code, impose upon the county commissioners the obligation to "construct and keep in repair necessary bridges over streams and public canals on state and county roads, free turnpikes, improved roads, abandoned turnpikes and plank roads in common public use," and the provisions of Section 7557, General Code, specifically require the county commissioners to construct and keep in repair "all

necessary bridges * * * on all state and county roads, free turnpikes, improved roads, transferred and abandoned turnpikes and plankroads, which are of general and public utility, running into or through such village or city."

Both of the above sections make exception of bridges within cities and villages having the right to demand, and which do demand and receive, a portion of the bridge fund levied upon property within such corporation. Such exception, however, is no longer of any force or effect for the reason that there is now no statute authorizing any city or village to demand or receive any portion of the bridge fund created by county levy. Provision is made by Section 5635, General Code, for making a levy on the taxable property within the county for road and bridge purposes, and the county commissioners are required to set aside such portion as they deem proper to be applied for the building and repair of bridges, which is called a "bridge fund."

It is quite manifest from a consideration of these several sections of the General Code that the county commissioners are required to construct and maintain bridges, such as the one in question in this case, even though they be in cities and villages, and that, therefore, notwithstanding the annexation by the city of Cincinnati of the territory including said bridge, it is still the duty of the board of county commissioners of Hamilton county to maintain and keep in repair and, when necessary or advisable, construct another bridge in that location. The county commissioners of Ham-

ilton county were relieved of no duty whatever with respect to the care and maintenance of such bridge by virtue of the annexation proceeding, nor did that proceeding serve to terminate the contract between the county commissioners and the inter-urban company or take away from either party any of the obligations imposed or rights secured thereby.

Formerly the board of county commissioners was not liable for damages caused by negligence in failing to keep a bridge in proper repair, but such liability is now imposed by Section 2408, General Code.

It is claimed, however, that by reason of the requirements of Section 3714, General Code, which provides that "the council [of a municipal corporation] shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts, within the corporation, and shall cause them to be kept open, in repair, and free from nuisance," the duty is imposed upon the city of Cincinnati to keep all bridges within the corporate limits, including the bridge here in question, in repair.

This court in the case of the *City of Piqua* v. *Geist,* 59 Ohio St., 163, makes a clear distinction between the duties of county commissioners and officers of municipalities with reference to the supervision of bridges, which we believe to be pertinent here. It is there held that "county commissioners are not required to construct and keep in repair bridges over natural streams and public canals, on streets established by a city or village

for the use and convenience of the municipality, and not a part of a state or county road, though the city or village receive no part of the bridge fund levied on the property within the same. It is the duty of the city or village to construct and keep in repair such bridges, and is liable in damages to one injured by its neglect to do so."

As there pointed out it is the exclusive duty of the municipal authorities to construct and keep in repair any bridge which forms a part of a street established by a city, which is not a part of a state or county road, and the county commissioners have no duty or responsibility whatever in respect to the construction, care and maintenance of any such bridge. On the other hand, the provisions of the statute above cited, in clear and unmistakable language, place upon the county commissioners the duty of constructing and keeping in repair necessary bridges in cities and villages on state or county roads of general public utility running into or through such cities or villages.

We do not agree with counsel for the interurban company in the view that the municipal authorities have no duty whatever with reference to bridges of the character of the one in question in this case, which are within the municipality and form a part of a city street. It is to be observed, however, that there is no statutory requirement that they shall construct or reconstruct any such bridge. In our opinion the various provisions — which counsel for the city contend and the court of appeals held confer like authority and responsibility with reference to this bridge upon the

municipal and county officers — may be placed in harmonious relation, as pointed out in *Mooney, Admr.,* v. *The Village of St. Marys,* 15 C. C., 446, by Price, J., later a member of this court. It undoubtedly would be the duty of the city authorities to take necessary steps to protect and safeguard the public, by placing barriers or otherwise, or possibly by making temporary repairs and giving notice of the defective condition. They may make extensive repairs, but are not required by statute to do so. The county commissioners not only create by levy, but have complete control of, the bridge fund from which the expense of construction and repair of such bridge is to be met, and hence it is their duty to construct and repair it. The municipality has no control of the county bridge fund, and there is now no authority whatever to place any part thereof in its control for any purpose.

No authority whatever is conferred by statute upon the officers either of the county or of the municipality to maintain this action against the company. No statute requires the company to maintain the bridge in question. The obligation of the company arises solely from its contract, to which the city is an entire stranger. The obligation of the county commissioners continues and none of the rights secured by their contract have been lost or surrendered.

Even though it be conceded that the city and county authorities had concurrent jurisdiction over this bridge, and that there devolved upon each the same duty to keep it in repair, which we think is not

the case, the contract of the company was with the county commissioners only, and under the terms of that contract repairs are to be made and the bridge rebuilt by the company when deemed necessary by the board of county commissioners and shall be supervised by the county engineer and county commissioners. It does not appear that the company has refused to comply with the terms of its contract, and there can be no presumption that the company will refuse to comply with the direction of the county commissioners in respect to making repairs or even rebuilding such bridge, as required by its contract. That board may require the construction of a concrete floor in the bridge or even a rebuilding of the bridge entirely. Under the terms of this contract it is left to the county commissioners to determine what shall be done, and it is presumed, particularly in view of the statute which makes county commissioners officially liable for negligence in failing to make such repairs, that they will discharge their clear and manifest duty. The portion of the contract before us in nowise indicates that it was contemplated, or could have been contemplated, by the parties thereto, or either of them, that by annexation proceedings or otherwise the officials of the city should be substituted as a party to the contract for the county officials therein designated.

In the care and maintenance of this bridge the county commissioners represent the public, no less now than before the annexation of the territory to the city, and this action cannot therefore be maintained upon the theory that the municipal authori-

ties, as representative of the public, succeed to the rights of the commissioners under the contract with the interurban company and its successors. The principle announced in the case of *Emmitt* v. *Brophy,* 42 Ohio St., 82, in our opinion has no application to this case. The duty and authority of the board of county commissioners remain unchanged and the interurban company must respond to the requirements of that board under the terms of its contract.

For the reasons assigned, it is our opinion that the court of common pleas was right in sustaining the demurrer to the petition, and the court of appeals was in error in taking the contrary view. The judgment of the court of appeals is therefore reversed and that of the common pleas affirmed.

*Judgment reversed.*

NICHOLS, C. J., JOHNSON, DONAHUE and JONES, JJ., concur.

WANAMAKER, J., dissents.