Matthias, J.
 

 The real question in this case is whether the proposed improvement is one of which the city planning commission, either by virtue of the charter of the city of Cincinnati or the provi
 
 *655
 
 sions of Section 4366-2, General Code, has any jurisdiction, or one with reference to which it has any duty to perform. The refusal of the mayor and the clerk to authenticate the ordinance in question is based upon the claim that a two-thirds instead of a majority vote is necessary because of the adverse report of the city planning commission. If the planning commission had any authority to act in this matter and its report had any validity, then the refusal of the officials was right, but if this improvement is one with which the city planning commission had nothing to do, then the refusal of the officers to act in the respect stated was wrong, and such action being the refusal to perform a duty especially enjoined by law may be enforced by mandamus.
 

 The improvement which is the basis of the controversy in this case has been undertaken by the county commissioners of Hamilton county, under and by virtue of the provisions of Section 6949 of the General Code. That section authorizes the board of county commissioners to construct a proposed road improvement into, within, or through a municipality when the consent of the council of said municipality has been fi«st obtained, and provides that “such consent shall be evidenced by the proper legislation of the council of said municipality entered upon its record*1.” It is further provided thereby that the council may assume and pay such portion of the costs pnd expenses of that part of the proposed improvement within said municipality as may be agreed upon between the board of county commissioners and the council. The portion of the section which is particularly pertinent in the
 
 *656
 
 consideration and decision of the issue here presented is as follows:
 

 ^‘If no part of the cost and expense of the proposed improvement is assumed by the municipality, no action on ■ the part of the municipality, other than the giving of the consent above referred to, shall be necessary; and in such event all other proceedings in connection with said improvement shall be conducted in the same manner as though the improvement were situated wholly without a municipality.”
 

 The contention of counsel for the relator, that the ordinance of the city of Cincinnati giving the consent of the municipality to the erection of the Eighth street viaduct under the proposed plans which received the affirmative vote of a majority of the council was thereby passed, and consequently should be authenticated by the presiding officer and clerk of the council, and recorded by the latter, is based upon the claim that the construction of the proposed viaduct by the county commissioners with state aid, under and by virtue of statutory authority, is an improvement of state-wide concern, the same being made by the state through its agency, the county commissioners, and that, therefore, the municipal authorities have no jurisdiction of or control over such improvement; and this is urged particularly in view of the fact that no part of the costs and expenses of the proposed improvement is to be assumed by the municipality.
 

 It is to be observed that the position thus taken by counsel for the relator is based upon the view that the county commissioners are authorized to construct this viaduct as a road improvement into,
 
 *657
 
 within, or through a municipality. The sovereign power of the state of Ohio over its highways is not in question here. Surely that power cannot be seriously questioned. Pursuant to that power the Legislature has provided by Section 1189-1 of the General Code that:
 

 “The road now known as intercounty highway No. 7, extending along the Ohio river * * * through the municipalities of Cincinnati [and then reciting names of municipalities to and including Gallipolis], in the state of Ohio, is hereby declared to be a main market road to be known and designated as the Atlantic and Pacific Highway.”
 

 It is agreed that this highway is “one of the great transcontinental highways of the United States, extending from the Atlantic seaboard to the Pacific coast,” and that this Eighth street viaduct is a portion of that highway. Under and by virtue of the provisions of Section 1189, General Code, the street of which the proposed viaduct is a part is “deemed to be a state road within the meaning and for the purposes of Section 7557 of the General Code.” The latter section, as does also Section 2421, General Code, requires the county commissioners to construct and keep in repair all necessary bridges on all state and county roads of general and public utility running into or through such village or city.
 
 Interurban Ry. & Terminal Co.
 
 v.
 
 City of Cincinnati,
 
 94 Ohio St., 269, 114 N. E., 258;
 
 State, ex rel. Bushnell, Trustee,
 
 v.
 
 Board of County Commrs. of Cuyahoga County,
 
 107 Ohio St., 465, 140 N. E., 81. Authority is thereby conferred to construct a viaduct or high level bridge.
 
 State, ex rel. Howell,
 
 v.
 
 Eirick,
 
 84 Ohio St., 503, 95 N. E., 1156.
 

 
 *658
 
 By the provisions of Section 1226, General Code, the term “highway” includes a bridge which forms a part of a road authorized by law. Under and by virtue of Section 1184, General Code, the director of highways and public works of the state has general supervision of the construction, improvement, maintenance, and repair of all intercounty highways and main market roads and all bridges and culverts thereon. He is required to aid and advise the county commissioners in the construction and improvement of such highways and to approve the design, construction, maintenance, and repair of all bridges or other improvements on intercounty or main market roads, and to cause plans, etc., therefor, to be prepared when requested by the authorities having charge thereof.
 

 The construction of this viaduct as a part of such highway being therefore an improvement of general concern, under proceedings, by the state through its duly designated and authorized agencies, cannot be affected in any manner by any action or proceeding of municipal authorities further than clearly and expressly delegated.
 

 It is contended by counsel for the respondents that the provisions of both the charter of the city of Gincinnati and of Section 4366-2, General Code, require that the plans for the construction of said viaduct must be submitted to and receive the approval of the city planning commission, or, in the event of its disapproval, must have the favorable ■action of not less than two-thirds of the members of the council.
 

 In addition to what has heretofore been said with reference to the character of the improvement con
 
 *659
 
 templated, and the fact that it is an improvement of state-wide importance, and not merely local in character and use, and that it is being constructed by the state through an agency specifically delegated and authorized, attention need only be directed to the proposition that the charter, being necessarily limited to matters that are local and municipal in character, cannot apply to or affect a proceeding by the state under its police power. Numerous cases involving a consideration of this proposition have been before this court. An analysis or even a citation of those cases is unnecessary. Practically all pf them are cited and discussed in the case of
 
 Cleveland Telephone Co.
 
 v.
 
 City of Cleveland,
 
 98 Ohio St., 358, 121 N. E., 701. The principle here involved was decided in the comparatively recent case of
 
 Niehaus, Bldg. Inspector,
 
 v.
 
 State, ex rel. Board of Education of City of Dayton,
 
 111 Ohio St., 47, 144 N. E., 433. The following excerpt from that opinion is particularly pertinent to this case:
 

 ‘ ‘ The power to exercise sovereignty in local self-government, and local police power not in conflict with general law, does not confer upon municipalities the power to enact and enforce legislation which will obstruct or hamper the sovereign in the exereise of a sovereignty not granted away * * *. The sovereignty of the state extends throughout the municipalities in all matters not clearly surrendered, and that sovereignty may not be defeated by the enactment of an ordinance inconsistent with general laws.”
 

 If a controversy such as this were to arise with reference to the location of a new statehouse or
 
 *660
 
 state office building in the city of Columbus, would it be contended that either the charter or the provisions of the statute relied upon here would apply and have the effect of authorizing the city planning commission of the city of Columbus to control the location thereof or exercise any authority whatever with reference to approving the plans or determining whether such structure should be or could be erected upon the statehouse grounds, or upon any other location determined upon by the state government? It is our opinion that no such power of the sovereign has been delegated to the municipality. The police power conferred upon the municipality is only local police power, and the provisions of the charter in question must therefore be held to have reference only to improvements of purely local and municipal concern constructed by municipal authorities at municipal expense.
 

 It is our opinion that the provisions of Section 4366-2 of the General Code, in so far as that section confers any authority, are limited to like improvements and structures. Not only is there no power • conferred upon a municipal planning commission to control the location or dictate the plans of construction of improvements under state jurisdiction and control, but the language used quite clearly indicates that the provisions of this statute have reference only to local improvements. That the improvements over which it was contemplated a municipal planning commission should have any control were within such limitation is manifested by the reference therein to “the department head of the department which has control of the construction of the proposed improvement,” and by the provision that such department head and the
 
 *661
 
 council by a two-thirds vote may overrule such disapproval of the planning commission. And such limitation is still more apparent in the last sentence of the section, where it is provided that:
 

 “The commission may make recommendations to any public authorities or to any corporations or individuals in such municipality or the territory contiguous thereto, concerning the location of any buildings, structures or works to be erected or constructed by them.”
 

 This provision makes it perfectly clear that no authority was conferred by the preceding portion of the section upon the planning commission to control or to have any part in the location of any public structures except such as are municipal in character and use, for as to any others it “may make recommendations” only, which is a denial of authority to do anything more than that. Moreover, Section 4366-2 and Section 6949, General Code, can be harmonized only upon the theory that the former has reference merely to municipal improvements, for under the latter section the mere consent is all that is necessary, the municipality paying no part of the expense and therefore its approval of plans not being required, and that consent having been given the proceedings go forward “in the same manner as though the improvement were situated wholly without a municipality.” It may be further observed that the amendment of Section 6949, General Code, adding the provision just quoted to the section as it theretofore read, was made subsequent to the enactment of Section 4366-2, General Code.
 

 It follows that the consent of the municipality,
 
 *662
 
 evidenced by proper legislation of council entered upon its record, as provided by Section 6949, General Code, is all that is required, and in the absence of any provision to the contrary it must be concluded that 'the vote of only a majority of the legislative body of the municipality was contemplated. No presumption will be indulged to effect a delegation of power to a municipality which at the same time limits or curtails the sovereign power of the state. The consent of the municipality has been evidenced by proper legislation, in that concededly the ordinance granting same has received the affirmative vote of a majority of the members of the council, which is sufficient not only under Sections 4224, 4227, and 4237, General Code, but also under the general provisions of Article 2, Section 5, of the charter of the city of Cincinnati. It therefore becomes the duty of the presiding officer and clerk of the council to duly authenticate said ordinance.
 

 Though the pleadings set up the conflicting opinions of the city planning commission and the planning committee of the council respecting the location — or, rather, the length of the proposed viaduct — and the reasons supporting their recommendations, it is not our province to consider or determine any question of policy, but only the question of power, and the problem as to plans and details of the proposed improvement must be solved by those to whom that duty has been delegated and upon whom that authority has been conferred.
 

 Writ allowed.
 

 Day, Allen, Kinkade and Robinson, JJ., concur.