BRUNS ET AL. *v.* HIRT ET AL., BOARD OF COMMISSIONERS
OF SANDUSKY COUNTY, ET AL.

(Decided February 24, 1936.)

*Messrs. Yager, Bebout & Stecher,* for plaintiffs in error.

*Mr. Glenn P. Bracy,* village solicitor, and *Mr. Harry Garn,* for defendants in error.

OVERMYER, J. The parties stood in the same relation in the Common Pleas Court where the plaintiffs, Wm. H. Bruns and others, filed a petition against the defendants, the County Commissioners of Sandusky county, Ohio, and the village of Woodville, Ohio, seeking damages because of a change of grade in the high-

way in front of plaintiff's premises in connection with the construction by the State Highway Director of a new bridge and its approaches across the Portage river within the corporate limits of said municipality.

A general demurrer to the petition was filed by each defendant. The demurrers were sustained, and the petition was dismissed at plaintiff's costs. Error is prosecuted to this court to reverse the judgment.

The demurrers, of course, admit the properly pleaded allegations of the petition, and construing the petition most favorably to the pleader, as we are required to do, we find the following facts fairly pleaded: That the plaintiffs are the owners of a certain lot within the village of Woodville, abutting upon East Main street of such village, which is a part of State Highway No. 275; that for many years there was a fixed and established grade of such street or highway in front of plaintiffs' property, and that plaintiffs' residence, outbuildings, driveway, sidewalks, etc., had all been erected and established with reference to and in conformity with such grade; that in conformity with that grade a bridge had been built across the Portage river a short distance west of plaintiffs' property, all within the corporate limits of the village.

The petition further says that in June, 1932, the Director of Highways of Ohio proposed to tear away the bridge and construct a new bridge and that pursuant to said proposal the Council of the village on June 30, 1932, passed an ordinance, as provided in Section 1189, General Code, consenting to the making of such improvement by the Director of Highways; that on October 15, 1932, the Board of County Commissioners passed a resolution (as provided in Section 1191, General Code) to co-operate with the Director of Highways in making the improvement, wherein the commissioners expressly agreed to pay one hundred per cent of the cost of all rights of way and property damage necessary in the construction of the proposed bridge.

Both the ordinance of the village and the resolution of the commissioners are attached to and incorporated in the petition.

It is further alleged that the director, acting on the ordinance of the village and the resolution of the commissioners, did proceed and did take away the old bridge and constructed a new bridge with necessary approaches, and in so doing completely altered and changed the long-established grade of the street in front of plaintiffs' property by raising the grade thereof six feet, creating an almost perpendicular drop of about seven feet to plaintiffs' property, thereby destroying the means of ingress and egress to and from plaintiff's property; that there was no opening left in the 15-inch curb for a driveway to plaintiffs' property; that mud and water are washed onto plaintiffs' property from the fill, and that the view has been impaired, landscaping destroyed, its marketability impaired, all to their damage in the sum of $3,000. It is further alleged that no notice was ever given them of the proposed change of grade, and no opportunity afforded to appear and object thereto, and that the plaintiffs have been deprived of their property without compensation, their demands for payment from the defendants having been rejected.

The erection of bridges includes, of course, the necessary approaches thereto. 6 Ohio Jurisprudence, 112, Section 58.

The ordinance of the village of Woodville attached to and incorporated in the petition does nothing more than give consent to the improvement of the highway, within the corporate limits, by the Director of Highways, and directs a certified copy of the ordinance to be furnished by the clerk to the Director of Highways and the Board of County-Commissioners of Sandusky county.

The resolution of the commissioners, passed about four months after the ordinance of the village, and at-

tached and incorporated in the petition, is as follows:

"RESOLUTION OF COUNTY COMMISSIONERS OF SANDUSKY
COUNTY, OHIO, TO COOPERATE WITH THE
DIRECTOR OF HIGHWAYS.

"Whereas, the public interest demands the improvement hereinafter described, and

"Whereas, the Board of County Commissioners of Sandusky County, State of Ohio, desires to co-operate with the Director of Highways of the State of Ohio in accomplishing said improvement:

"Now, therefore, be it resolved by the Board of County Commissioners of Sandusky County, State of Ohio:

"SECTION 1. That the public interest demands the improvement, under the provisions of Section 1189 and related sections of the General Code of Ohio, of that part of State Highway, No. 275, situated in the Village of Woodville, County of Sandusky and State of Ohio, more particularly described and known as being the Fremont - Perrysburg Road, U. S. Route No. 20.

"SECTION 2. That the Board of County Commissioners of Sandusky County, State of Ohio, does hereby propose to cooperate with the Director of Highways of the State of Ohio, in the construction of a new Bridge over the Portage River, within the Village Corporate limits, on the above described portion of the State Highway No. 275, and inasmuch as Sandusky County, through this Board, is charged with the construction and maintenance of bridges on state and county roads in municipal corporations, particularly this bridge in question, and inasmuch as the State Highway Department has agreed to assume and pay the entire cost of this bridge construction, and inasmuch as the Village of Woodville is unable to bear any of this expense connected therewith, this Board agrees to assume and,

"PAY 100% of the cost of all Rights of Way and Property Damage, if any, that is necessary in the construction of said bridge.

"SECTION 3. That this resolution be and remain in force from and after the earliest period allowed by law."

In view of the clear and unambiguous language of the above resolution, with the intention in adopting it so clearly expressed, our attention is at once challenged to inquire upon what grounds the commissioners now seek to avoid its plain import. It is well settled law that a change of grade which impairs or destroys a property owner's means of ingress and egress constitutes a taking of property, and, the demurrer admitting the allegation that plaintiff's means of ingress and egress were destroyed, it follows that plaintiffs are entitled to compensation from some one. A few of a host of authorities on this proposition are the following: *Young* v. *City of Toledo,* 39 Ohio App., 553, 178 N. E., 33; *Schimmelmann* v. *L. S. & M. S. Ry. Co.,* 83 Ohio St., 356, 94 N. E., 840; *Crawford* v. *Village of Delaware,* 7 Ohio St., 459; *Hamilton, Glendale & Cincinnati Traction Co.* v. *Parish,* 67 Ohio St., 181, 191, 65 N. E., 1011, 60 L. R. A., 531; *Smith* v. *Commissioners,* 50 Ohio St., 628, 35 N. E., 796; *Lewis* v. *Douglass et al., Commrs.,* 12 Ohio App., 386, 31 C. C. (N. S.), 13.

The commissioners seek to avoid liability for the property damage by contending that they did not do the actual work which resulted in the change of grade, and, further, that they are only liable in cases where the statute fixes and creates a liability, and that their liability is not a constitutional one but a statutory one, and that there is no statutory authority for their liability herein. Article I, Section 19 of the Ohio Constitution, is as applicable to county commissioners as to any other public authority. If private land or property rights are taken for public use by county com-

missioners, they must pay for them, statute or no statute.

There is, however, statutory authority for their liability. Section 1191, General Code, provides, among other things:

"Any board of county commissioners desiring to co-operate as provided in this section may, by resolution, propose such co-operation to the Director, and a copy of such resolution, which resolution shall set forth the proportion of the cost and expense to be contributed by the county, shall be filed with the Director. Where any portion of the work covered by such proposal is within the limits of a municipal corporation, such proposal shall be accompanied by the consent of the municipal corporation to the doing of such work, evidenced by proper legislation of its council or other legislative body unless such consent has already been given by said municipal corporation to the Director. * * * Unless otherwise expressly restricted, the authority granted to county commissioners by this section to cooperate with the department of highways shall extend to all portions of the state highway system, both within and without municipal corporations, subject to the condition that the consent of a municipal corporation be given to the performance of any work within its limits."

See State, ex rel. Bradley, v. Board of Commrs. of Cuyahoga County, 128 Ohio St., 181, 190 N. E., 571.

Section 1191-2, General Code, provides: "Where county commissioners, under authority of Sections 1191 and 1191-1 of the General Code, cooperate with the Department of Highways, said commissioners shall be authorized, with the approval of the director, to purchase or appropriate such property as may be needed, or pay damages, if any, in the construction, * * * , including the bridges and culverts and viaducts thereon, and the approaches thereto * * *."

The commissioners also claim that their powers are

limited by Section 6860, General Code, and that they are without authority to make any improvement involving a change of grade, or alter in any way any state highway, without the consent of the State Highway Director. The resolution of the commissioners clearly indicates that such consent of the director was here given, and that they invited the director to do the work.

It is further claimed that Section 1189-2, General Code, gives the director authority to enter a state highway within a municipality, with its consent, and to proceed to build a bridge and its approaches, and that if he elects to do so that then the county commissioners are thereby entirely relieved of any responsibility in the matter, and that in this respect the provisions of Section 7557, General Code, are modified and abrogated. This is entirely refuted by their own document, the resolution they adopted, which recites: "and inasmuch as Sandusky County, through this Board, is charged with the construction and maintenance of bridges on state and county roads in municipal corporations, *particularly this bridge in question,* and inasmuch as the State Highway Department has agreed to assume and pay the entire cost of this bridge construction, and inasmuch as the Village of Woodville is unable to bear any of this expense connected therewith, this board agrees to assume and, pay 100% of the cost of all rights of way and property damage, if any, that is necessary in the construction of said bridge."

Under Section 1189, General Code, as it existed prior to its amendment in 1929, there may have been some doubt on the subject of the continued liability of the county commissioners when the State Highway Director entered the village to make an improvement, but by the amendment of that section all doubt was removed, and the amendment was quite evidently adopted for that purpose following the decision in *Yountz* v. *Village of Avon Lake,* 19 Ohio App., 182, in

1925, and certain opinions of the Attorney General. The amendment of Section 1189, General Code, referred to, will be later set forth herein.

Great reliance is placed by the commissioners upon the case of *Sheppard* v. *County Commissioners*, 26 O. L. R., 81, decided in 1927. However, that case did not involve a bridge; it was decided before Section 1189, General Code, was amended, specifically continuing the liability of county commissioners under Section 7557, General Code; and it cites as supporting authority *Yountz* v. *Avon Lake, supra,* which case likewise did not involve a bridge and was based on statutes since repealed.

A fair construction of the petition in the case at bar, together with the exhibits attached, indicates that the State Highway Director refused to undertake the work unless the commissioners agreed to be responsible for their part of the cost, which was "any property damages resulting." Counsel for the commissioners argue that the director could have made this improvement without the consent of the commissioners, or even against their wishes, and Section 1189-2, General Code, authorizes the director to enter upon a state highway within a municipality and build a bridge and approaches, and pay the entire cost from state funds. But in this case it clearly appears he did not choose to do that, for, if he had, the commissioners would not have passed a resolution pledging the payment of 100 per cent of all property damage, and if no change of grade was by them contemplated they likely would not have passed the resolution agreeing to liability for all property damages.

Plaintiffs do not rest their case upon contract altogether, but also upon the plain provisions of the constitution prohibiting the taking of private property for public use without compensation, yet a board of commissioners may so bind the county by their acts as not to be permitted to avail themselves of their own

neglect or dereliction of duty, and thereby escape liability. *State, ex rel. Bradley,* v. *Board of County Commrs. of Cuyahoga County, supra; Wilder* v. *Commissioners,* 41 Ohio St., 601.

Section 7557, General Code, enacted many years ago, requires county commissioners to construct and keep in repair all necessary bridges on state roads in villages and cities, and Section 3714, General Code, also an old statute, provides that:

"The council shall have the care, supervision and control of public highways, streets, * * * bridges, * * * within the corporation, and shall cause them to be kept open, in repair, and free from nuisance."

It is specifically provided in Section 1189 *et seq.,* General Code, the new State Highway Act, under the provisions of which the State Director of Highways has authority to enter a municipality and erect a bridge, with or without financial cooperation of the village or county commissioners, within his discretion (except that he must have the consent of the village), that even though the director chooses to enter the municipality and construct the bridge, as he may do, and to pay such part of the cost as he agrees in advance to pay, the commissioners are not thereby relieved of their responsibility under Section 7557, General Code. The provision referred to in Section 1189, General Code, is as follows:

"When any road or street into or through a municipality is designated as a state highway, such action shall in no way relieve the county commissioners of their obligations for the construction or maintenance of bridges as set forth in General Code section 7557."

See also the following decisions: *Interurban Ry. & Terminal Co.* v. *Cincinnati,* 94 Ohio St., 269, 114 N. E., 258; *Youngstown* v. *Sturgess,* 102 Ohio St., 480, 132 N. E., 17; *Cooper et al., Commrs.,* v. *Bradlyn,* 123 Ohio St., 392, 175 N. E., 603; *Andrews* v. *Village of Georgetown,* 34 Ohio App., 79, 170 N. E., 450.

As to the liability of the village of Woodville herein it will be noted that the petition alleges that "the Director of Highways proposed to tear away the old bridge and construct a new bridge, and that pursuant to said proposal the council of the village passed the ordinance" giving its consent to the Director to make such improvement. It is apparent from the petition, considered with the ordinance of the village and the resolution of the commissioners attached thereto, that the Director of Highways chose to release the village of Woodville from paying any part of the cost of the bridge and from paying any part of the property damage, as he had a right to do under Section 1189-2, General Code. This becomes apparent from the fact that the ordinance is silent on the question of cooperation, simply giving the consent of the village to the improvement under the supervision of the Director of Highways, and stating that "the Director of Highways is considering the matter of the improvement under his supervision," etc., whereas, if the director had not assumed the whole cost so far as the village is concerned it would have been necessary, as provided in Section 1189-2, General Code, to have the village propose the cooperation to the director, and in the resolution of proposal to "set forth the proportion of the cost and expense to be contributed by the municipality." That section authorizes the village to co-operate with the director and to "pay such portion of the cost of such work, as may be agreed upon between the municipality and the director," but it is obvious from the petition and the exhibits that the director did not require any financial cooperation from the village, simply securing its consent for him to make the improvement, as the statute required.

The continuing liability of the village, under Section 3714, General Code, to keep its streets open, in repair and free from nuisance, as provided in Section 1189, General Code, as applied to this case, relates in our

opinion to the village's duty to keep the street "open, in repair, and free from nuisance" after the improvement is completed and accepted, and does not impose upon it *ipso facto* any liability for construction costs or property damage connected with the construction of this bridge, a duty resting primarily on the county commissioners and not on the village, unless the village had specifically agreed with the Director of Highways to bear a part of such cost or property damage. They clearly did not agree so to do, as appears from the petition.

The evident purpose of the present statutes touching situations such as we have here is to avoid multiplicity of liability and control and to centralize such liability. Public policy requires that there should be unity in such control and not a divided control with attendant complications and confusion.

The cases of *City of Youngstown* v. *Sturgess, supra,* and *Cooper* v. *Bradlyn, supra,* might indicate a different holding, but those cases involved actions for personal injuries, and the question of concurrent liability between the city and the county arose, not over the construction of a bridge or highway, but over the maintenance of a nuisance or out-of-repair condition on a county bridge or its approaches within the city after the bridges and approaches had all been constructed and were in use.

The commissioners make a further claim that although they adopted the resolution above set forth, whereby they induced the Director of Highways to enter the municipality and construct the bridge and approaches, and agreed to pay 100 per cent of all property damage resulting therefrom, they are now relieved of the obligation because they failed to pass resolutions approving the plans, etc., and a resolution determining to proceed, and entered into no formal contract. As to this claim we can only say that the claim is untenable because it is unconscionable. It would

amount to saying: Yes, we passed a resolution which induced the director to go ahead with the work, and now that the work is completed we gladly accept the benefits, but refuse to pay what we had agreed to pay because we failed to do some thing we were required to do.

The courts have uniformly refused to entertain such pleas, even though the formal requirements of statutes have not been complied with. Benefits in such cases cannot be secured and retained and liability evaded by wrongful acts in obtaining them. *Longworth* v. *City of Cincinnati,* 48 Ohio St., 637, 29 N. E., 274; *Cheseldine* v. *Commissioners,* 6 C. C., 450, 3 C. D., 533; *Commissioners* v. *McGee,* 20 C. C., 201, 11 C. D., 106; *Lewis* v. *Douglass et al., Commrs.,* 12 Ohio App., 386, 31 C. C. (N. S.), 13; *Daily* v. *State,* 51 Ohio St., 348, 37 N. E., 710, 24 L. R. A., 724; *Richards* v. *City of Cincinnati,* 31 Ohio St., 506.

The last two cases hold that plaintiffs are not barred by failure to enjoin the improvement.

We might also suggest that the further proceedings to be taken by the commissioners, which are provided for in Sections 1195-1 and 1200, General Code, contemplate a contribution by them to the actual construction work. In such event the director would want to make sure such contribution was available when he needed it to pay construction costs undertaken by him. The situation in this case did not require that. The commissioners were liable to the abutting property for damages that might result to it. By their resolution they made it clear they would continue and recognize that liability. With them doing so, the director was not interested further in that phase of the project. It was a matter between the commissioners and the property owners, to be settled directly, and the director did not need any assurance that the county funds for that purpose were available, as would be the case if county money were to go into the construction

cost as contemplated by Section 1200, General Code. Further, the damages to abutting property could not well be determined until the construction was completed and the actual damage, if any, became apparent.

We hold that the petition herein states a cause of action against the defendant Board of County Commissioners for the reason that under the Constitution and statutes of Ohio certain primary obligations rest upon the county commissioners in the premises, which they cannot, by any act of theirs, evade unless the Director of Highways expressly chooses to assume them; that the petition herein fairly construed shows that he did not so assume them as to property damage; that under Section 1189, General Code, no presumption arises that he did assume them, the resolution of the commissioners specifically negativing such presumption.

The judgment of the Court of Common Pleas in sustaining the demurrer of the commissioners will be reversed and the cause remanded with directions to overrule the demurrer of the commissioners, and for further proceedings according to law. The judgment sustaining the demurrer of the village will be affirmed.

*Judgment accordingly.*

LLOYD and CARPENTER, JJ., concur.