Zimmerman, J.
This action in quo warranto is one in which the respondent is called upon to show by what authority it is exercising its franchise rights in certain townships of Franklin County in disregard of the plan for those townships adopted by the Board of County Commissioners.
Although a highly important matter is presented in this case, the basic issues are relatively simple. Respondent claims that because of the nature and extent of its business and because of the powers of eminent domain conferred on it by the General Assembly of Ohio it is not amenable to Section 713.25, Revised Code, and furthermore that the wording of that sec *458 tion is not broad or comprehensive enough to embrace it.
Or, in the- words of counsel for respondent, the contention is:
1. “The Board of County Commissioners, by adopting a plan for county development, pursuant to Section 713.25, Revised Code, can not prevent the location and construction through the county of facilities of a public utility, having the right of eminent domain under the statutes of this state, designed to provide service to citizens in other areas of the state and in other states.”
2. “The authority of the Regional Planning Commissioii relates solely to matters of local concern and not to matters of state-wide significance. ’ ’
Section 713,23, Revised Code, reads:
“The regional or county planning commission shall make plans and maps of the region or county respectively, showing the commission’s recommendation for systems of transportation, highways, park and recreational facilities, the water supply, sewerage and sewage disposal, garbage disposal, civic centers, and other public improvements which affect the development of the region or county respectively, as a whole or as more than one political unit within the region or county, and which do not begin and terminate within the boundaries of any single municipal corporation.” (Emphasis supplied.)
The word, “transport,” is defined in the New Century Dictionary as “to carry or convey from one place to another.” The Oxford English Dictionary defines the same word as “to carry, convey or remove from one place or person to another; to convey across.” And in a number of instances the term, “transportation,” has been applied to the “transmission of electric current * * * through appropriate instrumentalities” from one locality to another. See Mill Creek *459 Coal & Coke Co. v. Public Service Commission, 84 W. Va., 662, 100 S. E., 557, 7 A. L. R., 1081, and the A. L. R. annotation beginning at page 1094; 18 American Jurisprudence, 411, Section 5.
Section 713.25, Revised Code, states:
“The planning commission of any municipal corporation to which a regional or county plan is certified under Section 713.24 of the Revised Code, may adopt such plan, and it shall thereupon have the same force within such municipal corporation as is provided by law or charter for plans prepared and adopted by the local planning commission. The Board of County Commissioners may adopt such plan so far as it relates to nonmunicipal territory. Thereafter no public building, roadway, bridge, viaduct,' or other public improvement or utility, publicly or privately owned, whose construction or location would constitute a departure from the plan shall be constructed or authorized by the board except by unanimous vote. Such plans shall not designate the specific lots or parcels of land upon which such system, facilities, buildings, and improvements are proposed to be placed, but only the general site or location thereof. * * *” (Emphasis supplied.)
Reading Sections 713.23 and 713.25, Revised Code, together, we conclude that the term, “systems of transportation,” as used in Section 713.23, includes and was intended to include a public utility such as an electric power company with its poles or standards carrying its wires.
It is dear that respondent is engaged in a business serving public needs. Because of the nature of such business, the state of Ohio, through the General Assembly, has conferred on it the power of eminent domain, which is the right to appropriate private property for a public use upon the payment of just compensation.
*460 As a comparatively recent development and to meet the necessities of a changing and expanding civilization, the General Assembly has also conferred upon Boards of County Commissioners the right, in the public interest and to promote the general welfare, to adopt and enforce planning measures whereby facilities and installations which serve the public needs in specified areas may be regulated and controlled as to location.
Although they are sometimes used interchangeably the terms, “zoning” and “planning,” are not synonymous. Zoning is concerned chiefly with the use and regulation of buildings and structures, whereas planning is of broader scope and significance and embraces the systematic and orderly development of a community with particular regard for streets, parks, industrial and commercial undertakings, civic beauty and other kindred matters properly included within the police power. 1 Yokley’s Zoning Law and Practice (2 Ed.), 2, 3, Section 1. And see Mansfield & Swett, Inc., v. Town of West Orange, 120 N. J. Law, 145, 149, 198 A., 225, 228, and Mills v. City of Baton Rouge, 210 La., 830, 839, 28 So. (2d), 447, 451.
Respondent’s right to pursue its business, to construct and maintain power lines and to exercise its power of eminent domain in territory where planning measures are operative cannot be successfully challenged, but is the exercise of those rights subject to reasonable regulations in conformity with a plan adopted under the provisions of Section 713.25, Revised Code?
In attempting to answer this question, it must be borne in mind that the power of eminent domain enjoyed by the respondent and the power of Boards of County ■ Commissioners to adopt and enforce planning measures both emanate from the same source, *461 namely, the General Assembly, and both must be accorded recognition.
After carefully weighing the conflicting claims of the parties, a majority of this court has reached the conclusion that Sections 713.23 and 713.25, Revised Code, are sufficiently definite and comprehensive in their terms to include a public utility like respondent, and that respondent is subject to a plan duly adopted pursuant to Section 713.25. Certainly the opposite position would allow respondent to traverse the planned area with is power lines in any way it pleased, which course might well disrupt or even ruin the whole planning scheme, to the public detriment. This view hardly seems in keeping with the intent and purpose of the General Assembly in enacting the statutes relating to planning.
The remaining problems are less difficult. If, in the location and construction of its power lines through the planned territory, respondent has departed or is departing from the plan, as charged in the petition, it has the right, under Section 713.25, Revised Code, to request the Board of County Commissioners to approve such departure. For all we know, should such action be taken, any departure from the plan by respondent might be approved and that would solve the whole difficulty in respondent’s favor in the townships involved.
If the action of the board is unfavorable to respondent, we think it would have the right of appeal to the courts. Concededly, neither Section 713.25, Revised Code, nor any related section mentions appeal. However, Section 307.56, Revised Code, found in Chapter 307, devoted to the powers and duties of Boards of County Commissioners provides:
“A person aggrieved by the decision of the Board of County Commissioners in any case, may appeal within 15 days to the Court of Common Pleas * * *462 (Emphasis supplied.) Compare Eggers v. Morr et al., County Commissioners, 162 Ohio St., 521, 124 N. E. (2d), 115.
Respondent relies on the case of State, ex rel. Ellis, City Solicitor, v. Blakemore, Clerk, 116 Ohio St., 650, 157 N. E., 330, as supporting its claim that the Board of County Commissioners of Franklin County may not interfere with respondent’s operations in sucia county. However, that case dealt with the right of an agency of the state government under express statutory authority to construct a viaduct on an intercounty or main market road as against the opposition of a municipality, and is hardly in point here.
Since a majority of this court is of the opinion that respondent is amenable to the provisions of Section 713.25, Revised Code, and since upon application to the Board of County Commissioners of Franklin County that agency might approve the construction and maintenance by respondent of its electric power lines through the planned territory as proposed by it, most of the separate defenses contained in the answer, assuming their validity, are premature and inappropriate at this time. We know of no statutory provision which invests the Public Utilities Commission with jurisdiction over a public utility in its acquisition of land preparatory to constructing and maintaining electric power lines, and, assuming the defense of laches or estoppel may properly be asserted in a quo warranto action against a Board of County Commissioners acting in a governmental capacity (Ohio Electric Power Co. v. State, ex rel. Martin, Pros. Atty., 121 Ohio St., 235, 240, 167 N. E., 877, 878), such defense is hardly tenable here where it appears that respondent’s power lines had not been completed through the planned territory prior to the adoption of the plan; and where respondent was fully aware that its activities in such territory were being carried *463 forward in disregard of the protests of the Franklin County Regional Planning Commission, and that such activities would, in all probability, be contested in a court action.
For the reasons stated, the demurrer to the answer is sustained.

Demurrer sustained.

Weygandt, C. J., Matthias and Bell, JJ., concur.
Hart, Stewart and Taft, JJ., dissent.