Taft, J.,
dissenting. As I view this case, it involves a relatively simple problem of statutory construction. In order to prevail, relator must obviously rely upon that portion of Section 713.25, Revised Code, which provides that, after the Board of County Commissioners has adopted a plan, then in nonmunicipal territory “no public building, roadway, bridge, viaduct, or other public improvement or utility, publicly or privately owned, whose construction or location would constitute a departure from the plan, shall be constructed or authorized by the board except by unanimous vote.”
It is equally obvious that, by the words “departure from the plan,” the General Assembly meant a departure from something which was not only included in' the plan but which the General Assembly authorized for inclusion in the plan. For example, if the General Assembly did not authorize the inclusion in a plan of anything with respect to an electric generating plant operated as a public utility, then there could be no departure from the plan with respect to the location of such plant, even though such plant would ordinarily be described by the words “public * * * utility, publicly or privately owned.”
These statutes only authorize adoption of a plan made by a regional or county planning commission. *464 In order to see what the General Assembly authorized for inclusion in such a plan it is necessary to examine the provisions of Section 713.23, Revised Code, which read:
‘ ‘ The regional or county planning commission shall make plans and maps of the region or county respectively, showing the commission’s recommendation for systems of transportation, highways, park and recreational facilities, the water supply, sewerage and sewage disposal, garbage disposal, civic centers, and other public improvements which affect the development of the region or county respectively, as a whole or as more than one political unit within the region or county, and which do not begin and terminate within the boundaries of any single municipal corporation.”
From a reading of the foregoing statute, it is apparent that, by no stretch of the imagination, could electric transmission lines be included within the words describing anything which is to be shown on the maps or plans of the planning commission unless included within the words “systems of transportation” or ‘ ‘ other public improvements. ’ ’
The meaning of the words “public improvements” might be stretched so as to include an improvement owned by a private corporation for use as a public utility. However, our decisions certainly indicate the conclusion that the words “public improvements” mean improvements owned by the public. City of Dayton v. Haines, Aud. (paragraph two of the syllabus), 156 Ohio St., 366, 369, 373, 102 N. E. (2d), 590.
The meaning of the words “systems of transportation” would also have to be expanded considerably beyond their ordinary meaning in order to have them include electric transmission lines. It may be argued that the transmission of electricity is the transportation of electricity. However, the word “transportation,” when given its ordinary meaning, refers to the *465 carrying, conveying or movement of persons and tangible property from one place to another. We do not ordinarily speak of transporting such an intangible element as electricity.
This court has held that laws “which impose restrictions upon the use * * * of private property, will be strictly construed and their scope cannot be extended to include limitations not therein clearly prescribed.” State, ex rel. Moore Oil Co., v. Dauben, Bldg. Insp., 99 Ohio St., 406, 124 N. E., 232, paragraph one of syllabus; State, ex rel. Ice & Fuel Co., v. Kreuzweiser, Insp., 120 Ohio St., 352, 356, 166 N. E., 228.
It is only by expanding beyond their ordinary meaning the scope of the words used by the General Assembly in Section 713.23, Revised Code, that it can possibly be held that the General Assembly expressed an intention that a regional or county planning commission was to be authorized to include electric transmission lines in the plans or maps showing its recommendations. Any analysis of the words used by the General Assembly leads irresistably to the conclusion that the General Assembly did not express any such intention.
By the words of Section 713.23, Revised Code, the only things which may be included in plans or maps showing the recommendations of a planning' commission are :
1. Systems of transportation.
2. Highways.
3. Park and recreational facilities.
4. Water supply.
5. Sewerage and sewage disposal.
6. Garbage disposal.
7. Civic centers.
8. Other public improvements.
The words of these eight categories are further limited to such of those items “which affect the de *466 velopment of the region or county respectively, as a whole or as more than one political unit within the region or county.” Although it might be said that anything done or located in a region may affect the development of a region, it is fairly apparent that that is not what the General Assembly meant by the use of those words. In the case of a regional plan, those words were apparently intended to limit the items set forth in each of those eight categories to items having a regional flavor as distinguished from those having an extraregional flavor. It is obvious that the items specified in categories three, four, five, six and seven would all necessarily have only a regional flavor. Those specified by the general words used with respect to one, two and eight might have only a regional flavor although, if they stood alone, they might conceivably be given a more extended meaning. It is significant that, as to each of the five categories where the legislative language is specific, each such category necessarily has a regional flavor only. It is, therefore, reasonable to conclude that the General Assembly intended similarly to limit the general words used with respect to the other three categories, especially since they are reasonably susceptible to such a limitation. If the General Assembly had even used a word as specific as “railroads,” it could reasonably be argued that, since railroads ordinarily would include something having more than a regional flavor, the general words used with respect to categories one, two and eight could include something having more than a regional flavor. However, in no instance where the General Assembly used specific language did it describe anything which could reasonably have more than a regional flavor. See State, ex rel. Ellis, City Solr., v. Blakemore, Clerk, 116 Ohio St., 650, 157 N. E., 330.
The words in Section 713.25, Revised Code, “other *467 public * * * utility, publicly or privately owned,” clearly refer to public utilities such as water companies and local transportation systems (possibly also those specified in categories five and six) which were often privately owned at the time of enactment of these statutes in 1923.
It may be observed that the implications of relator’s contentions in the instant case are very broad. If his contentions are sustained, there can be no statewide or interstate highways, turnpikes, railroads, telephone and telegraph lines, or oil or gas pipelines in an area covered by a regional or county plan without the unanimous approval of the county commissioners. Furthermore, every county might exercise such powers, thus creating a great burden of local controls upon statewide and interstate facilities. In my opinion, unless the language used by the General Assembly clearly indicates that it intended such revolutionary consequences, we should hesitate to extend that language beyond its ordinary meaning in order to effect such consequences. It is not the province of this court to so legislate.
Hart and Stewart, JJ., concur in the foregoing-dissenting opinion.