The Ohio Postal Telegraph-Cable Co., Appellant, *v.*
Yant et al., Appellees.

(Decided April 8, 1940.)

Messrs. *Kibler & Kibler* and Messrs. *Henderson, Burr, Randall & Porter,* for appellant.

*Mr. T. B. Mateer,* for appellees.

Sherick, P. J.  This is a pole-in-the-road case, instituted by the telegraph company for damages to its equipment.  Its solution, in view of the pronouncements found in *Cambridge Home Telephone Co.* v. *Harrington,* 127 Ohio St., 1, 186 N. E., 611, and *Ohio Bell Tel. Co.* v. *Lung, Admx.,* 129 Ohio St., 505, 196 N. E., 371, is approached with the usual deference, but without diffidence in the soundness of our conclusion herein reached.

The defendant, Yant, was the owner of a Ford roadster.  Defendant, Dye, was its driver.  They, with two other grown people, occupied the car's only seat. While proceeding northeasterly on Route 79, south of Newark, where the road bears to the right on a 7 degree

curve, the car was driven across the center line of the highway upon the left side thereof and proceeded upon a tangent with the center line until it crossed the road's west berm. From this point the car's course continued upon the tangent over the grass and slope 165 feet to a point where the automobile collided with appellant's pole, which was broken near its base and rendered 17 of its principal circuits inoperative for a period of eight hours.

The roadway at the points of departure and impact is 70 feet in width. It is improved with bituminous macadam to a width of 22.4 feet and a gravel strip on each side thereof two feet in width. The road is banked on the west side. The pole is definitely located within the highway. It stood five feet east of the west right of way line and 13 feet west of the west edge of the bituminous pavement, that is, 11 feet west of that part of the highway improved for vehicular travel and use at that point. The ground line of the pole is 3.3 feet below the level of the west edge of the bituminous macadam. Neither the top of the berm, nor the slope of the bank to the pole, was intended or improved for travel. The slope was wet and soggy and grown up with grass and weeds.

The defendants defended upon the theory of the *Harrington* and *Lung cases, supra,* which is to say, in the language of Section 9170, General Code, that the pole incommoded them in the use of the road, and that its erection and maintenance was an act of static negligence and the proximate cause of the collision, by reason of which, even though defendants be found negligent, plaintiff could not recover, because it was guilty of contributory negligence.

Upon defendants' motion plaintiff was required to elect. It chose to proceed against the driver of the car. No question is made concerning the propriety of the court's ruling. At the conclusion of plaintiff's case both parties moved for an instructed verdict. Neither

desired submission of the cause to the jury. Thereupon, the jury was discharged and upon request the court separately stated its finding of facts and conclusion of law. It was found that the defendant driver was negligent, but plaintiff was denied recovery upon defendant's theory of the case. The claimed errors upon which this review is predicated are susceptible of division into two propositions, first, in that the court erred in its conclusion of law in holding that plaintiff was negligent in maintaining its pole, and second, in its finding that the pole's maintenance was a proximate and contributing cause. One further fact, as yet unrelated, is of prime importance. It is proven and conceded that the company had the statutory right and authoritative permission to erect and maintain its poles within the limits of the highway.

This tribunal was the intermediate court which considered the *Lung case, supra.* We unhesitatingly therein subscribed to the rule of the *Harrington case, supra,* for the particular reason that the pole in both cases was within, or in close proximity to, the improved portion of the highway. In both cases there not only existed a possibility of injury to those who used the roads, but also a self-evident probability which might have been fairly contemplated. Such being true, it naturally followed that a jury question was presented, first, as to whether or not the maintenance of these poles amounted to an invasion of that portion of the roadway improved and intended for vehicular traffic. If it was within, or in close proximity to, the improved portion, it was an obstruction which incommoded the public and was a nuisance. There also existed the question of proximate and contributing cause. But do we have a like situation presented by the facts of this case?

We are cognizant of the admonition that the syllabus of a case is only the law in so far as it pertains to the facts of the case. We, therefore, feel at liberty to con-

sider our facts, and the law applicable, as one of first impression. The same view is taken with respect to the construction to be placed upon that portion of Section 9170, General Code, which recites, "but shall not incommode the public in the use thereof." If the traveling public has a right of user of the entire highway, then, as pointed out by Judge Matthias, some public body has the duty cast upon it of making and keeping it fit for public travel. Surely, such was never intended. If the rule of the *Harrington case, supra,* is extendable to objects clearly without the roadway and not in close proximity to the improved portion, then guard and bridge rails, trees, roads and railway signs of all descriptions, mail boxes, road-lighting poles, plantings for esthetic purposes, parked cars, hydrants and numerous other appliances are obstructions which "incommode the public in the use thereof." If this be the law, then the responsible public body or individual acts, or fails to act, at its, or his, peril.

It is significant that the statute uses the word "use." To our notion, the traveling public has no superior right to misuse the highways. It is inconceivable that a traveler may destroy warning signs placed thereon for his protection and safety, or that, under a claim of superior right, one may negligently or wantonly drive through and ruin costly shrubbery placed along roads for their beautification.

The Legislature has by statute, fortified by much judicial construction, recognized the right of *quasi*-private corporations, who serve the public generally, to place an additional servitude upon public thoroughfares. Messages by wire relieve traffic congestion. Modern business and the business of living demand and require these luxuries which have now become necessities. The fact that these companies derive a profit from their operation is not important or of any consequence.

We believe the law is, and should be, as found suc-

cinctly stated in the annotation found in 82 A. L. R., 395, which we quote and adopt:

"It may be stated as a general proposition that a company lawfully maintaining poles in or near a public highway is not liable for the damage to person or property resulting from a road vehicle striking such pole, unless it is erected on the traveled portion of the highway or in such close proximity thereto as to constitute an obstruction dangerous to anyone properly using the highway, and the location of the pole is the proximate cause of the collision."

It is a poor rule which fails to work both ways. When the plaintiff is found to be lawfully using the highway, and its pole is not upon or in close proximity to the portion thereof improved and set aside for vehicular travel, and in all common foreseeable probability not an instrumentality liable to injure a traveler, and when, on the other hand, we find a motorist who admits his negligence, or is proven to have been negligent, and who misuses the highway and invades that portion thereof reserved for other lawful purposes, and who by his own carelessness injures the property of another, is, and should be, liable for the damage which he does to such property which is lawfully upon the highway.

It seems crystal clear that the traveling public has no right to drive upon that portion of a public highway which is not dedicated, improved and made passable for vehicular use. To accord him preeminence is to deny the statutory right of occupancy given to public utilities, and to withhold from public authority the right to regulate public thoroughfares. We grant that emergencies may arise where such use is permissive. But we do not recognize any such unqualified superior right to a negligent traveler who abuses his privilege.

Section 9170, General Code, contemplates a lawful use of the improved portion of a highway and that portion thereof which is in close proximity to its

proper use. This constitutes that portion of the roadway in which the traveling public has a superior right, and in the use of which the public may not be incommoded. Surely, the word "use" does not include its misuse, which is evident, even as to the improved portion thereof, by our statutes which regulate its use in many respects, of which vehicles with lugs are excellent illustrations. This section of the General Code is not a go sign to the public, but a grant of a right of user to a magnetic telegraph utility, with a restriction upon its accorded privilege to not incommode the public in the lawful use of that portion of the road provided for public travel.

Was the pole's position in this state of facts the proximate cause of the collision? The answer is emphatically, no. The defendants' car got out of control. Had it gone through the fence and run into a dwelling house, it would be then just as illogical to say that the house caused the injury. The proximate cause was defendants' negligence. Clearly, the plaintiff could not have anticipated that its pole would or could be struck by a passing vehicle. There were no questions of disputed fact and no jury question. The law was misapplied. The judgment should have been for the plaintiff.

If our judgment needs fortification by authorities, such may be found listed with hardly a dissenting murmur in 82 A. L. R., 395, and 98 A. L. R., 487.

Examination of the evidence discloses that the plaintiff made no proof of damage because of interruption of service. It proved the cost of by-pass service upon parallel telephone lines, but it was not shown that it incurred any expense, or that it resorted to this channel for delivery of a single message. It may not recover for any such claimed damages. It is, however, proven that plaintiff sustained damages in replacements and repairs in the sum of $91.46.

The judgment is reversed and final judgment is

entered in plaintiff's favor in the sum of $91.46, costs to be taxed in accordance with the statute.

*Judgment reversed.*

MONTGOMERY, J., concurs.
LEMERT, J., not participating.