CARNEY ET AL., APPELLEES, *v.* MCAFEE; CITY OF SANDUSKY, APPELLANT.

[Cite as Carney *v.* McAfee (1988), 35 Ohio St. 3d 52.]

(No. 87-155—Decided January 20, 1988.)

*Murray & Murray Co., L.P.A.,* *Dennis E. Murray* and *Kirk J. Delli Bovi,* for appellees.

*Flynn, Py & Kruse Co., L.P.A.,* and *John A. Coppeler,* for appellant.

WRIGHT, J. The gravamen of this case is whether a municipality can be held liable under R.C. 723.01 for damages resulting from an automobile accident on a bridge located on a state highway within the municipality, where the bridge was designed and constructed by the state and the state is responsible for maintaining and inspecting the structure.

All of appellees' claims against appellant were premised on alleged violations of R.C. 723.01. Thus, if appellant owed a duty to appellees, which would be a prerequisite to liability, it would be a duty that arises under R.C. 723.01. This statute, as it read at the time of the accident, provided:

"Municipal corporations shall have special power to regulate the use of the streets. The legislative authority of such municipal corporation shall have the care, supervision, and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts with-in the municipal corporation, and shall cause them to be kept open, in repair, and free from nuisance."

To determine whether a duty was owed to appellees under this statute, we must first decide whether appellant is amenable to a lawsuit under the facts set forth in this case.

Although we have overruled the judicially created doctrine of sovereign immunity, we have repeatedly held that immunity may still be provided by statute. *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, 2 OBR 572, 442 N.E. 2d 749, paragraph two of the syllabus; *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 35, 6 OBR 53, 56, 451 N.E. 2d 228, 232; *Strohofer* v. *Cincinnati* (1983), 6 Ohio St. 3d 118, 6 OBR 178, 451 N.E. 2d 787.

R.C. 723.54, as it was in effect at the time of the accident, provided in pertinent part:

"The legislative authority of a municipality shall designate a municipal official to have responsibility for inspection of all bridges or portions thereof within such municipality, except for bridges on the state highway system and the county highway system.

" * * *

"*A municipal corporation shall not be liable for damages under section 723.01 of the Revised Code for injuries to person or property on bridges for which the municipal corporation does not have the responsibility of maintenance or inspection.*"[3] (Emphasis added.)

---

[3] R.C. 723.54 has since been amended by the Political Subdivision Tort Liability Act, which became effective on November 20, 1985. The Revised Code provision granting statutory immunity is now found at R.C. 2744.02(B)(3), which states:

"Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivision open, in repair, and free from nuisance, except that *it is a full defense to such lia-*

Therefore, to determine whether statutory immunity is available to a municipality under this provision, we must decide what political subdivision is responsible for maintaining or inspecting the structure involved in the instant case. It is clear that Ohio law places such responsibility directly on the state of Ohio.

R.C. 5523.17 provides, in pertinent part, that:

"After the completion of the work of constructing * * * a separated crossing * * *, the separated crossing and the approaches thereto shall be kept in repair as follows:

"(A) When the public way crosses the tracks of any railroad company by a structure carrying the highway over such tracks the responsibility for inspection and the cost of maintenance shall be borne by the state;

"* * *

"(C) All such public ways and their approaches shall be inspected, maintained, and kept in repair by the state."

Since the bridge was constructed by the state as a separation crossing over a railroad, it is apparent that this statute applies and the state is obligated to maintain and inspect the structure.[4]

Simply because the city of San-

dusky received state highway funds to maintain state roads within the city and sometimes performed repair work on these roads, including the bridge in question, does not show that the municipality assumed, or the county relinquished, any responsibility for maintaining or inspecting the bridge in question. Evidence that the city installed a guardrail on the bridge after the accident is not conclusive of responsibility either. The bridge was, and currently remains, a part of the state highway system; it was never dedicated to the city as a public street as was the case in *Lengyel* v. *Brandmiller* (1942), 139 Ohio St. 478, 22 O.O. 521, 40 N.E. 2d 909. In fact, the state inspects the bridge annually, and on its inspection report, it designates Erie County as the party responsible for maintenance.

It is an undisputed fact that the bridge was designed and constructed by the state as part of the state highway system. As such, the state was obligated to inspect and maintain the structure and the approaches thereto, including the "watch for ice on bridge" signs that were erected on State Route 250 near the structure.

As we stated in *Mitchell* v. *Cleveland Elec. Illum. Co.* (1987), 30 Ohio St. 3d 92, 30 OBR 295, 507 N.E. 2d

---

*bility, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.* (Emphasis added.)

[4] In addition, two related statutes, although not directly applicable to the facts in the instant case, further emphasize that the state has the obligation of maintaining and inspecting bridges on state roads.

R.C. 5591.02 states:

"The board of county commissioners shall construct and keep in repair all necessary bridges in municipal corporations on

all state and county roads and improved roads which are of general and public utility, running into or through such municipal corporation."

R.C. 5591.21 states in pertinent part:

"The board of county commissioners shall construct and keep in repair necessary bridges over streams and public canals on or connecting state, county, and improved roads.* * *"

See, also, *Interurban Ry. & Terminal Co.* v. *Cincinnati* (1916), 94 Ohio St. 269, 278, 114 N.E. 258, 260; and 1981 Ohio Atty. Gen. Ops. No. 81-007.

352, paragraph one of the syllabus, "R.C. 723.01 does not create a duty requiring a municipality to protect individuals from, or warn them of, dangers existing on property which is beyond its corporate limits *or control.*" (Emphasis added.)

Nevertheless, the appellate court below held the city of Sandusky was liable "either under R.C. 723.01 for a nuisance or upon common-law negligence grounds" for failure to maintain the flashing, ice-warning signs in accordance with R.C. 4511.11. As discussed *supra,* such a holding lacks merit because liability against the city under R.C. 723.01 is precluded by the statutory immunity provisions of R.C. 723.54.

In addition, a common-law negligence claim against the city of Sandusky, which was not specifically pleaded in the complaint, is unfounded because the duty to maintain signs on a state highway — even those signs erected by a city — is delegated to the state, not a municipality.[5] A duty of care owed to plaintiff by defendant is one of the factors necessary to establish an actionable cause of negligence. *Strunk* v. *Dayton Power & Light Co.* (1983), 6 Ohio St. 3d 429, 431, 6 OBR 473, 475, 453 N.E. 2d 604, 606. "Before the city can be held liable, both pleading and proof must show an obligation due the plaintiff on the part of the city, which has been violated. * * * " *Dering* v. *Cleveland* (1921), 102 Ohio St. 94, 95, 130 N.E. 504.

The dissent below was entirely correct in stating "the argument that R.C. 4511.11 is applicable is a red-herring, thrown in to further confuse the issues." Under the facts in this case, R.C. 4511.11 cannot shift the burden of responsibility from the state to the city, And we cannot find that the city acted improperly when it took the initiative and erected signs warning of ice on the bridge, especially when it was apparent that the state itself was dilatory in alerting the driving public of this hazardous condition.

Since the state was responsible for the maintenance and inspection of the bridge in question, the city of Sandusky was protected from liability by the statutory immunity conferred under R.C. 723.54. Thus, the trial court erred in not granting appellant's motions for directed verdict and a judgment notwithstanding the verdict.

Although we have empathy for appellees, injury alone will not be sufficient to support a cause of action for negligence. *Taylor* v. *Cincinnati* (1944), 143 Ohio St. 426, 430, 28 O.O. 369, 371, 55 N.E. 2d 724, 726; *Leipsic*

---

[5] R.C. 4511.10 provides in pertinent part:

"The department of transportation may place and maintain traffic control devices, conforming to its manual and specifications, upon all state highways as are necessary to indicate and to carry out sections 4511.01 to 4511.78 and 4511.99 of the Revised Code, or to regulate, warn, or guide traffic."

This statute indicates that the state is authorized to maintain traffic-control devices, such as the warning signs found here, upon all state highways. While R.C. 4511.10 also allows a municipality to place a traffic-control device on a state highway with the permission of the Director of Transportation, the responsibility of ensuring that such a device is maintained, whether the actual maintenance is furnished by the municipality or by the state itself, remains with the state.

If such a traffic-control device is not properly maintained or in any other way does not conform to the "Ohio Manual of Uniform Traffic Control Devices for Streets and Highways," the Director of Transportation is authorized to remove, or require to be removed, any nonconforming device. R.C. 4511.11(B).

v. *Gerdeman* (1903), 68 Ohio St. 1, 67 N.E. 87. Furthermore, "* * * [t]he mere abrogation of [municipal] immunity does not free a plaintiff from establishing the required elements of the alleged tortious conduct. * * *" *Strunk* v. *Dayton Power & Light Co.* (1983), 6 Ohio St. 3d 429, 431, 6 OBR 473, 476, 453 N.E. 2d 604, 606. See, also, *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 6 OBR 53, 451 N.E. 2d 228.

Therefore, we hold that a municipality cannot be held liable under R.C. 723.01 for damages resulting from an automobile accident on a bridge located on a state highway within the municipality, where the bridge was designed and constructed by the state and the state is responsible for maintaining and inspecting the structure.

Because the city of Sandusky is immune from liability under R.C. 723.54, we need not address the other issues raised in this appeal. Accordingly, the judgment of the court of appeals is reversed and final judgment is entered for the appellant.

*Judgment reversed.*

MOYER, C.J., LOCHER and HOLMES, JJ., concur.

H. BROWN, J., concurs in judgment only.

SWEENEY and DOUGLAS, JJ., dissent.

DOUGLAS, J., dissenting. I dissent from today's decision because I believe the majority misapplies the alleged immunity of the appellant city of Sandusky under these facts.

Former R.C. 723.01 mandated that the legislative authority of a municipal corporation "shall have the care, supervision, and control of public * * * bridges * * * within the municipal corporation, and shall cause them to be kept open, in repair, and free from nuisance." The majority today holds that former R.C. 723.54 immunized appellant from liability by virtue of its provision that a municipal corporation shall not be liable for personal injury or property damage occurring on bridges "for which the municipal corporation does not have the responsibility of maintenance *or* inspection." (Emphasis added.) The majority reasons that since Ohio law invests the state, not cities, with the responsibility for maintaining and inspecting bridges such as the one in question, appellant is immune from liability. This analysis disregards a crucial point.

There was ample evidence in the record from which a reasonable juror could conclude that appellant had *assumed* the responsibility for maintaining and, in part, for inspecting the bridge in question. At the time of the accident, appellant had, for a period of over ten years, undertaken the responsibility for snow removal. Salting and sanding of the bridge surface when required were also performed by appellant. Before the accident, appellant was apparently exploring the possibility of installing a guardrail on the bridge, and eventually did so. Appellant has conducted all routine maintenance on the bridge since it was built. Appellant shares the responsibility of inspecting the bridge with the state, but appellant performs all necessary repairs to the bridge surface. Appellant installed flashing lights to warn motorists of potential ice hazards on the bridge.

All this evidence could easily convince a reasonable person that although the responsibility for maintenance and inspection may technically reside with the state, appellant had the

actual responsibility by virtue of its own assumption of these duties. Under this view of the evidence, the immunity provided by former R.C. 723.54 would not apply. Thus, the majority is clearly incorrect in its conclusion that the trial court erred in denying appellant's motions for a directed verdict and for judgment notwithstanding the verdict. This court has held that a trial court *must* submit an essential issue to the jury where sufficient evidence exists on that issue to permit reasonable minds to reach different conclusions. *O'Day* v. *Webb* (1972), 29 Ohio St. 2d 215, 58 O.O. 2d 424, 280 N.E. 2d 896, paragraph four of the syllabus. I vigorously disagree with the majority's holding that the trial court should have withheld the issue of appellant's liability from the jury.

The majority today does not touch on certain aspects of the court of appeals' opinion which I believe merit comment. The first of these is the appellate court's unwarranted injection of comparative negligence principles into this case. The court of appeals erred when it held that the trial court's failure to apportion negligence as mandated by R.C. 2315.19 was reversible error. The appellate court noted that appellant had pleaded contributory negligence as a defense in its answer, and concluded that the comparative negligence statute was thus brought into play. The court of appeals stated that "[t]he jury did not specify that plaintiff was zero percent negligent and this cannot be assumed." This is absurd.

In its answers to interrogatories, the jury found that appellant was eighty percent negligent and Hulon McAfee, the driver of the vehicle that slid into appellee's car, was twenty percent negligent. Since eighty percent plus twenty percent equals one hundred percent, I believe that the court of appeals would have been quite safe in assuming that appellee was zero percent negligent.

More importantly, however, the appellate court neglected to recognize that although appellant did raise contributory negligence as a defense in its answers, *it offered absolutely no proof at trial to demonstrate that such contributory negligence existed.* R.C. 2315.19 does not provide that the defendant can create a jury question on the issue of contributory negligence merely by pleading it as a defense, thereby mandating an instruction on the issue and submission to the jury even where absolutely no evidence has been offered to support it. In fact, it would be error to so instruct the jury under these circumstances.

"Where there is no evidence to support an issue of contributory negligence or assumption of risk, no charge should be given to the jury on either issue." *Riley* v. *Cincinnati* (1976), 46 Ohio St. 2d 287, 75 O.O. 2d 331, 348 N.E. 2d 135, paragraph two of the syllabus. Not only was no evidence presented warranting a jury instruction on contributory negligence, appellant did not request such an instruction, and did not argue contributory negligence at trial or in the court of appeals. The appellate court's holding that the trial court committed reversible error in failing to instruct the jury on contributory negligence is therefore completely unsupportable.

The same is true of the court of appeals' reversal of the trial court's award of prejudgment interest to appellees. Such awards are within the sound discretion of the trial court, and will not be reversed on appeal absent an abuse of that discretion. *Kalain* v. *Smith* (1986), 25 Ohio St. 3d 157, 159, 25 OBR 201, 203, 495 N.E. 2d 572, 574. This court has defined "abuse of discretion" as implying " 'not merely

error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' " *State, ex rel. Shafer,* v. *Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590-591, 50 O.O. 465, 469, 113 N.E. 2d 14, 19. See, also, *State, ex rel. Commercial Lovelace Motor Freight, Inc.,* v. *Lancaster* (1986), 22 Ohio St. 3d 191, 193, 22 OBR 275, 277, 489 N.E. 2d 288, 290. The trial court did not abuse its discretion by awarding prejudgment interest in this case.

R.C. 1343.03(C) provides:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, *shall be computed from the date the cause of action accrued* to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." (Emphasis added.)

The court of appeals found that appellant's belief that it was not liable due to the immunity granted by R.C. 723.54 was "not an unreasonable position, even though the jury determined * * * [appellant] was in part responsible for * * * [appellees'] damages, * * * and no malice, design to defraud or to seek an unconscionable advantage was evident." I see two problems with this holding. First, in finding that appellant's belief that it was not liable was reasonable, the court of appeals substituted its judgment for that of the trial court, which was in by far the bet-

ter position to judge the good faith or lack thereof in appellant's failure to attempt to settle. Second, the absence of malice or design to defraud is immaterial for purposes of awarding prejudgment interest under R.C. 1343.03 (C). A finding of bad faith is not necessary. *Kalain* v. *Smith, supra,* at 159, 25 OBR at 202-203, 495 N.E. 2d at 574. It is the lack of good faith, meaning the failure to make an honest effort to settle a case, that is the focus of inquiry. *Id.* Thus, the fact that appellant showed no malice or design to defraud and did not seek an unconscionable advantage is not dispositive.

However, I believe the trial court erred when it ordered that prejudgment interest be paid only from the date of the verdict holding appellant liable. R.C. 1343.03(C) mandates that such interest "shall be computed from the date the cause of action accrued * * *." Appellees' cause of action accrued on December 2, 1980, the date of the accident in question. Since prejudgment interest cannot be awarded for any period prior to July 5, 1982, the effective date of R.C. 1343.03(C), the interest should have been computed from that date. *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83, 19 OBR 123, 482 N.E. 2d 1248.

Accordingly, I would reverse the judgment of the court of appeals insofar as it disturbs the jury verdict in favor of appellees. I would reinstate that verdict in its entirety, but I would modify the trial court's award of prejudgment interest by ordering that such award shall be computed from July 5, 1982 to the date on which the money is paid.

SWEENEY, J., concurs in the foregoing dissenting opinion.