**NEIDERBRACH, Admr., Appellant,**

**v.**

**DAYTON POWER AND LIGHT COMPANY et al., Appellees.**

[Cite as *Neiderbrach v. Dayton Power & Light Co.* (1994), 94 Ohio App.3d 334.]

Court of Appeals of Ohio,
Miami County.

No. 93–CA–12.

Decided April 13, 1994.

Craig Denmead and Deborah A. Bonarrigo, for appellant.

James R. Greene III, David C. Greer and Michael W. Krumholtz, for appellee Dayton Power and Light Co.

James D. Utrecht, for appellees Lou Havenar, Don Hart, Wade Westfall, and Miami County Board of Commissioners.

BROGAN, Judge.

Kenneth Neiderbrach, as Administrator of the Estate of James Siler, appeals from the judgment of the Miami County Common Pleas Court which granted summary judgment to Dayton Power and Light Company (hereinafter "DP & L").

Appellant alleges that on or about December 9, 1989 at approximately 10:00 p.m., decedent was driving his 1987 Chevrolet Blazer west on Brown Road in Miami County. Siler's automobile skidded off the road and violently struck a utility pole, which is owned, maintained and controlled by DP & L. The utility pole is approximately sixteen feet, three inches from the edge of Brown Road. It was installed at its present location in 1947. The complaint further alleged that as a sole result of the collision with the utility pole, Siler suffered severe head injuries and multiple trauma, which eventually resulted in his death on June 24, 1990. A blood-alcohol test performed on the decedent following the accident revealed 0.224 percent alcohol by weight.

The complainant alleged that the defendant Miami County Board of Commissioners maintained Brown Road and its right-of-way. The complainant further alleged that the injuries suffered by James Siler were caused directly by the negligence of DP & L and the Miami County Board of Commissioners.

In its motion for summary judgment, DP & L argued that the distance of the utility pole from the edge of Brown Road warranted judgment in its favor based upon R.C. 4931.01, as expanded by R.C. 4933.14. The trial court granted summary judgment to the defendants without elaboration.

Appellant contends, in his sole assignment, that the trial court erred in granting summary judgment because the placement of the utility pole in the highway right-of-way by DP & L created an unreasonable hazard to motorists using Brown Road.

In his first argument, appellant contends the Ohio Supreme Court's recent opinion in *Mfr's. Natl. Bank of Detroit v. Erie Cty. Rd. Comm.* (1992), 63 Ohio St.3d 318, 587 N.E.2d 819, mandates that we reverse the judgment of the trial court.

In *Manufacturer's*, the Ohio Supreme Court held that a permanent obstruction to visibility, within the highway right-of-way, which renders the regularly travelled portions of the highway unsafe for the usual and ordinary course of travel, can be a nuisance for which a political subdivision may be liable under R.C. 2744.02(B)(3). The court held that where an abutting landowner or occupier uses the highway right-of-way in a manner inconsistent with a highway purpose and where such usage constitutes an unreasonable hazard to users of the highway, the

landowner or occupier may be liable for damages proximately caused by the improper use of the right-of-way.

In *Manufacturer's*, the petitioners claimed that a cornfield, growing in a right of way, constituted an actionable nuisance because it obstructed the driver's vision to the extent that it rendered the intersection unsafe. Justice Herbert R. Brown wrote at 323, 581 N.E.2d at 823–824:

"A permanent obstruction to a driver's visibility can be a nuisance which makes the usual and ordinary course of travel on the roadway unsafe. A visibility obstruction can be as hazardous to the highway's safety as a malfunctioning traffic light, a pothole in the roadway, or a rut in the shoulder. This is particularly true where a driver, stopped at an intersection, is unable to see approaching cross-traffic. The relevant focus is on the effect of the obstruction on the highway's safety, not on the nature of the particular obstruction. Whether the alleged obstruction in the present case (a cornfield) constitutes a nuisance which makes the highway unsafe and whether this was the proximate cause of the accident which occurred are questions upon which we express no opinion because such determinations require findings of fact."

In considering the duty of care owed by an owner or possessor of agricultural rural land to persons travelling on public roads abutting the land, the court noted:

"Growing crops in the right-of-way serves no highway purpose. Furthermore, if the crops obstruct a driver's vision in a way that creates a hazard to safe travel on the highway, the usage is inconsistent with the right-of-way's purpose. Again we make no factual determination with respect to whether the crops grown by Boos constitute such an obstruction. Nor do we impose any duty upon a landowner for obstructions to visibility located on land that is not within the right-of-way." *Id.* at 324, 587 N.E.2d at 824–825.

Appellees assert that *Manufacturer's* does not mandate a reversal of the trial court's judgment in this case. Appellees argue that R.C. 4931.01 and 4933.14 essentially grant licenses to utility companies to erect structures along public highways so long as they do not "incommode" the public in the use of those highways.

In support of its motion for summary judgment, DP & L relied on R.C. 4931.01, when read in conjunction with R.C. 4933.14. R.C. 4931.01 provides, in pertinent part, as follows:

"A telegraph company or any person may construct telegraph lines upon and along any of the public roads and highways, and across any waters, within this state, by the erection of the necessary fixtures, including posts, piers, or abutments for sustaining the cords or wires of such lines. Such lines shall be

constructed so as not to incommode the public in the use of the roads or highways * * *." (Emphasis added.)

This statute is equally applicable to DP & L by virtue of R.C. 4933.14, which states:

"[S]ections 4931.01 to 4931.23, inclusive, * * * of the Revised Code, apply to companies organized for supplying public and private buildings, manufacturing establishments, streets, alleys, lanes, lands, squares, and public places with electric light and power * * *." (Emphasis added.)

DP & L argues that *Manufacturer's* is distinguishable from the facts in this case because it is not an abutting landowner using the highway right of way inconsistent with highway purposes, and case law establishes as a matter of law that the utility pole was not an unreasonable hazard to users of the highway. We agree.

DP & L is a public utility using the highway right-of-way in a manner explicitly approved by the Ohio legislature. See R.C. 4931.01 and 4933.14. In *Manufacturer's*, the abutting landowner planted corn on the highway right-of-way in such a manner that it obstructed the view of a passing motorist of a nearby intersection. The utility pole struck by the plaintiff's decedent was located properly in the utility right-of-way sixteen feet, three inches from the edge of the roadway. The utility pole did not interfere with the proper use of the roadway. There was no evidence that the utility pole interfered with the victim's ability to see in his lawful use of the roadway.

In *Strunk v. Dayton Power & Light Co.* (1983), 6 Ohio St.3d 429, 6 OBR 473, 453 N.E.2d 604, the Ohio Supreme Court held that a municipality's duty to keep streets and highways free from nuisance does not extend to a driver of an automobile which collides with a light pole off the traveled portion of the roadway. Justice Brown noted in *Manufacturer's*, 63 Ohio St.3d at 322, 587 N.E.2d at 823:

"The township directs our attention to *Strunk, supra*, in which we refused to extend a municipality's duty under R.C. 723.01 past the portion of the highway considered the berm or shoulder, and held that as a matter of law a light pole located adjacent to a roadway or the shoulder was not a portion of the highway within the meaning of R.C. 723.01.

"*On closer examination, however, the court in Strunk focused on whether the light pole was a condition that made the roadway unsafe for the usual and ordinary course of travel.* In *Strunk*, the placement of the light pole adjacent to the roadway's shoulder did not jeopardize the safety of ordinary traffic on the highway. To the extent the language in *Strunk* is inconsistent with our holding today, our opinion in *Strunk* is hereby modified." (Emphasis added.)

The Licking County Court of Appeals in *Ohio Postal Telegraph–Cable Co. v. Yant* (1940), 64 Ohio App. 189, 18 O.O. 57, 28 N.E.2d 646, held that as a matter of law a telegraph pole located eleven feet from a road in the right-of-way did not "incommode" the public in the use of the public highway. The court noted:

"It is significant that the statute uses the word 'use.' To our notion, the traveling public has no superior right to misuse the highways. * * *

"It seems crystal clear that the traveling public has no right to drive upon that portion of a public highway which is not dedicated, improved and made passable for vehicular use. To accord him preeminence is to deny the statutory right of occupancy given to public utilities, and to withhold from public authority the right to regular public thoroughfares. We grant that emergencies may arise where such use is permissive. But we do not recognize any such unqualified superior right to a negligent traveler who abuses his privilege." *Id.* at 192–193, 18 O.O. at 58–59, 28 N.E.2d at 647.

Recently, the Court of Appeals for Summit County in *Turowski v. Johnson* (1990), 68 Ohio App.3d 704, 589 N.E.2d 462, affirmed the grant of summary judgment in favor of Ohio Edison Company when the plaintiff's decedent alleged wilful misconduct on Ohio Edison's part in erecting a utility pole thirty-one inches from a street curb, which pole the decedent struck while driving in an intoxicated state. Appellant's first argument is without merit.

■ Second, appellant argues that DP & L had a duty to erect or relocate the utility pole in question beyond the appropriate "clear zone of Brown Road" pursuant to available state-of-the-art methods and standards.

Appellant argues that summary judgment should not have been granted to DP & L because it failed to meet certain standards of the United States Department of Transportation in its placement of the utility pole in question alongside Brown Road. Specifically, appellant refers to Highway Safety Program Guideline No. 12 and the Highway Safety Program Manual issued by the United States Department of Transportation.

Highway Safety Program Guideline No. 12 is embodied in Section 1204.4, Title 23, C.F.R. That guideline provides:

"Highway Design, Construction and Maintenance

"Every State in cooperation with county and local governments should have a program of highway design, construction, and maintenance to improve highway safety. Guidelines applicable to specific programs are those issued or endorsed by the Federal Highway Administrator.

" * * *

"I. The program should provide, *as a minimum that:*

"J. There are highway design and construction features wherever possible for accident prevention and survivability including at least the following:

"1. *Roadsides clear of obstacles,* with clear distance being determined on the basis of traffic volumes, prevailing speeds, and the nature of developing along the street or highway." (Emphasis added.)

The Program Manual, Vol. 12, further supplementing those standards under Guideline No. 12, states at pages IV–12 through IV–13:

"*VI. CRASH SURVIVABILITY*

"Whereas a vital part of the overall safety effort in highway design, construction, and maintenance is to reduce the likelihood of vehicles going out of control, no less important are the aspects of highway engineering that increase survivability when drivers lose control of their vehicles. * * * Every State and local agency, therefore, should have an active program in all phases of highway design, construction, and maintenance to protect the occupants of an out-of-control vehicle and to avoid collisions with other vehicles and pedestrians. *The program should, as a minimum, center on the following general principles, based on accepted practice.*

"A. Provisions should be made on all expressways and on *high speed highways in rural areas* to reduce the possibility that out-of-control vehicles will crash into fixed objects or to increase survivability if they crash.

"1. *Roadsides should be clear of obstacles that could be struck by out-of-control vehicles. There should be a driver-control recovery area clear of obstructions as wide as practicable for the conditions of traffic volume, prevailing speeds and the nature of development along the street or highway. Wherever practicable it is desirable that a driver-control recovery area, clear of obstructions for a distance of 30 feet or more from the edge of the traveled way, be provided in rural areas.* The recovery area should contain gentle slopes that can be safely negotiated by an out-of-control vehicle. Ditch sections should be fully rounded and have gentle side slopes.

"2. In cases where roadside obstacles, such as sign and light posts, cannot be located in an unexposed position and may constitute a hazard to an out-of-control vehicle, yielding or breakaway supports should be used.

"3. *To assure at least minimum protection to the occupants of vehicles striking fixed objects that cannot be removed easily or designed so as to yield, provision should be made to install energy absorbing barriers such as guardrails or other similar protective devices.*" (Emphasis added.)

Appellant concedes that although these particular standards are specifically directed toward states and their political subdivisions, they create an existing

body of knowledge constituting state-of-the-art technology in the area of roadside safety.

Appellant argues that DP & L's standard of care should be evaluated in light of the AASHTO Guide, a guide issued by an organization called the "American Association of State Highway and Transportation Officials." The United States Department of Transportation requires the Federal Highway Administration to use this guide in evaluating the adequacy of state highway agency utility-accommodation policies. Section 645.211, Title 23, C.F.R. The AASHTO Guide provides in pertinent part:

"GENERAL CONSIDERATIONS

"The following general considerations are suggested for the location and design of all utility installations within the highway right-of-way:

"*Location*

" * * *

"4. *The horizontal and vertical location of utility lines within the highway right-of-way limits should conform with the clear zone policies applicable for the system, type of highway, and specific conditions for the particular highway section involved.* The location of above-ground utilities should be consistent with the clearances applicable to all roadside obstacles for the type of highway involved. * * *" (Emphasis added.)

Furthermore, page 19 of the AASHTO Guide sets forth the following recommendations:

"*OVERHEAD POWER AND COMMUNICATION LINES*

"*Location*

"On and along highways in rural areas poles and related facilities should be located at or as near as practical to the right-of-way line. *At a minimum, these facilities should be located outside the appropriate clear zone.*" (Emphasis added.)

The term "clear zone" is defined in the AASHTO Guide, on page 3, as:

"*Clear Zone*—That roadside border area, starting at the edge of the traveled way, available for use by errant vehicles." (Emphasis added.)

Appellant thus argues that the appropriate "clear zone" for Brown Road was thirty feet from the traveled roadway and thus the utility pole in question was not in the clear zone.

DP & L argues that these guidelines are inapplicable to it, and are discretionary and subordinate to the controlling case law. DP & L notes that the Introduction of the AASHTO Guide states at page 2:

"These guidelines make no reference to the legal rights of utilities to use or occupy a highway right-of-way. * * * *These matters are governed by state law. These guidelines should be interpreted and applied to the extent consistent with state laws which give utilities the right to use or occupy highway right-of-way." (Emphasis added.)

DP & L also notes that the AASHTO Guide and the Program Manual are replete with discretionary rather than mandatory language.

In *Curry v. Ohio Power Co.* (Feb. 14, 1980), Stark App. No. CA–2671, unreported, the Stark County Court of Appeals affirmed a summary judgment for Ohio Power where the car in which plaintiff was a passenger collided with an Ohio Power utility pole located fifteen feet, six inches from the edge of the two-lane rural road. Judge Dowd noted at page 10 of the court's opinion:

"Can it be contended that the telephone company when it placed its pole where it did could foresee that there would be some object placed on the macadamized part of the highway at this particular place that would deflect an automobile to such an extent that it would cross the ditch and strike the pole fifteen feet from the macadam portion thereof? If the Legislature of Ohio gave telephone companies a right to construct and maintain their telephone lines and poles upon public highways, could we say that they were negligent in placing their pole as they did in this particular instance? The poles, if they have this right, must be placed somewhere, and could they assume that this would be any more dangerous than if they had placed it fifty or a hundred feet from this particular spot and fifteen feet from the edge of the macadam part of the highway?

"The public as a general rule does not use or travel upon the entire limits of the right-of-way of a road, but there is a certain portion of it prepared by public authorities to be used to travel over, and in this case eighteen feet of it was prepared and improved for that purpose, and we can fairly assume that in addition thereto there was a berm. We can, therefore, conclude that in the event the pole as complained of herein would not incommode the public in the use of that part of the road then in active use by the public. And we find no other fact contained in the petition that would indicate the public had been incommoded in the use of this road by the maintenance of the telephone line; neither is there anything to show that the pole was not in a proper place, inasmuch as it was a safe distance from the macadam part thereof, and we can't say that the defendant was negligent by reason of the same. * * * *"

We agree with the appellee that the standards set by the United States Department of Highway Safety are suggestive and not mandatory. The utility pole was properly located in the utilities' right of way and was not incommodious to highway travelers.

■    Last, appellant argues that DP & L had an obligation to relocate its utility pole erected in 1947 to meet the requirements of the Ohio Department of Transportation Location and Design Manual ("ODOT Manual"). The ODOT Manual provides that "in all cases, the preferred alternative is to keep the entire Design Clear Zone free of fixed objects wherever economically feasible." Appellant argues the "design clear zone" must mean the same as "clear zone" in the AASHTO Guide.

Appellees argue that the ODOT Manual does not provide mandatory requirements. Rather, appellees note that the ODOT Manual reads:

"It is recognized that costs for mass relocation of hydrants, *poles*, light standards, and other utilities or appurtenances, *plus additional right-of-way costs would be excessive and would preclude the construction of many desirable road improvements.*" (Emphasis added.)

Furthermore, the ODOT Manual states that "in all cases, the *preferred* alternative is to keep the entire design clear zone free of fixed objects *wherever economically feasible.*" (Emphasis added.) *Id.* at 1.

In *Strunk v. Dayton Power & Light Co.* (Feb. 5, 1986), Montgomery App. No. CA–9457, unreported, 1986 WL 1702, we held that DP & L did not owe the appellant the duty to safely upgrade the light pole by either providing a guardrail or retrofitting it with breakaway devices.

We conclude that DP & L did not have a duty to remove the utility poles located within the utility right-of-way along Brown Road and reset them thirty feet from the travelled portion of Brown Road.

The trial court properly granted summary judgment to the appellees. Appellant's assignment of error is overruled. The judgment of the trial court will be affirmed.

*Judgment affirmed.*

GRADY, P.J., and WOLFF, J., concur.