ACCELERATED DOCKET JOURNAL ENTRY AND OPINION
{¶ 1} John and Carol Horvath appeal from an order of Judge Kathleen A. Sutula that granted summary judgment to appellee City of Broadview Heights ("City") on their claims arising out of Horvath's slip and fall. They claim that the City created both a hazard and a nuisance on their property and had an obligation to disclose such condition and warn against it. Because we find there are material issues of fact in dispute, we reverse and remand
 {¶ 2} From the record we glean the following: The Horvaths' home is on a pie shaped lot on a cul-de-sac and, during the winter months, City snow plows apparently come over the curb and dig into the tree lawn creating a denuded seven- to eight-inch drop-off. In April, 2002, Mr. Horvath was mowing his tree lawn for about the fourth time that year.[1] He followed his mower down a slight grassy incline toward the street and, as he attempted to turn it to the right to cut the next swathe, placed his foot on the curb/lawn.[2] He claimed he stepped on what he later learned was hydromulch, slipped and, unable to "reseat my foot because this all drops away," fell, and sustained severe injury to his left ankle. Apparently that day the City had sprayed the hydromulch to the dug-out edge of the Horvaths' lawn to correct the plow damage.
 {¶ 3} The Horvaths asserted negligence and loss of consortium claims against the City. The City responded with a general denial and, among its affirmative defenses, claimed contributory negligence, failure to mitigate damages, and immunity. It moved for summary judgment under R.C. 723.01 and R.C. 2744.02(A)(1), and claimed that it was not negligent and/or had no duty to warn of an alleged hazard that was open and obvious. The Horvaths opposed the motion, and also moved for summary judgment.[3]
 {¶ 4} Based upon her review of two photographs of the treelawn taken sometime after Horvath's injury, the judge concluded: "a reasonable mind could not come to the conclusion that the hydromulch presented a potential danger," and found that the City "lacked notice of the nuisance," and no evidence that hydromulch was a potentially dangerous nuisance. She concluded that the hydromulch created a condition that was "open-and-obvious," and that there was "no genuine issue of material fact with respect to this claim." The judge granted the City's motion and dismissed the case with prejudice.
 {¶ 5} The Horvaths' two assignments of error are set forth in the Appendix to this opinion. They challenge the grant of summary judgment on two grounds: First, they claim error in the application of the open-and-obvious doctrine to vitiate any claims against a statutorily imposed duty. Second, they claim error in finding the hydromulch did not create a nuisance that the City was required to disclose.
 {¶ 6} We review the grant of summary judgment de novo, using the same standard as the trial judge, which requires granting the motion if there is no dispute of material fact and the moving party is entitled to judgment as a matter of law.[4] Under Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor.[5] All doubts must be resolved against the moving party.[6]
I. CITY IMMUNITY
 {¶ 7} In their respective motions for summary judgment, the parties make claims involving statutory immunity and, in order to properly address this appeal, we must first address whether such immunity affects the Horvaths' assignments of error.
 {¶ 8} The Ohio Supreme Court has held that the availability of statutory immunity raises a purely legal issue which is properly determined prior to trial.[7] On the other hand, once an immunity defense is deemed available as a matter of law, its applicability to the actions of the parties becomes fact specific.[8]
 {¶ 9} In Carter v. City of Cleveland,[9] the Ohio Supreme Court set forth a three-tier analysis in order to determine liability on the part of a political subdivision or municipality. First, the judge must analyze whether the plain language of the statute grants political subdivisions immunity for personal injuries or death of a person.[10] The second tier analyzes whether, once immunity is established, the claim falls under one of five exceptions contained in R.C. 2744.02(B). The third tier of analysis requires a determination of whether immunity can be reinstated because one of the defenses in R.C.2744.03 applies.
 {¶ 10} The City argues that R.C. 723.01 and R.C. 2744.01
require that it keep its sidewalks, streets, and public grounds in repair and free from nuisance, and it was immune from liability because it was exercising such statutorily imposed duty when it sprayed hydromulch on the Horvaths' tree lawn.
 {¶ 11} R.C. 723.01, states in pertinent part:
{¶ 12} "Municipal corporations shall have special power toregulate the use of the streets and sidewalks, public grounds. . . [and] shall cause them to be kept open, in repair, and freefrom nuisance."
 {¶ 13} Likewise, R.C. 2744.02(A)(1) outlines a general grant of immunity, providing that:
{¶ 14} "a political subdivision is not liable in damages in acivil action for injury, death, or loss to person or propertyallegedly caused by an act or omission of the politicalsubdivision or an employee of the political subdivision inconnection with a governmental or proprietary function."
 {¶ 15} The regulation of the use of, and the maintenance and repair of streets, sidewalks, and public grounds is defined as a governmental function.[11]
 {¶ 16} The City contends, under the 1911 case of Barnesvillev. Ward,[12] "park strips between the curbing of the paved street and the pavement of the sidewalk" are part of its responsibility to maintain and repair. It overlooks, however, that in Barnesville and its applicable progeny, the municipal corporation owned the park strips/treelawns in question and they were considered public grounds. Moreover, the issue inBarnesville was whether summary judgment was appropriate if a city creates what could be considered a dangerous condition/nuisance.
 {¶ 17} Likewise in Joseph v. City of Portsmouth,[13]
where the City had itself placed an iron rod on a tree lawn that protruded about three inches and was obscured by grass, the issue was the same as addressed in Barnesville, and in both cases the Ohio Supreme Court found that:
{¶ 18} "[I]t is evident that there are triable issues to bedetermined in this cause, including findings as to the`conditions' allegedly causing the injury and whether appellantwas using the park strip `in an expected and ordinarymanner.'"[14]
 {¶ 19} In Strunk v. Dayton Power Light Co.,[15] the Ohio Supreme Court held:
{¶ 20} "We are unwilling to extend a municipality's duty[under R.C. 723.01] past that portion of the highway consideredthe berm or shoulder."[16]
 {¶ 21} The facts in the Horvaths' case preclude application of this portion of the statute and any exceptions under R.C.2744.02(B) because the City does not own or have any property rights in this tree lawn and no statutory duty to maintain it. Spraying hydromulch on private property was gratuitous and not a governmental function.
 {¶ 22} R.C. 2744.02(b)(2) provides:
 {¶ 23} "Except as otherwise provided in section 3746.24 ofthe Revised Code, political subdivisions are liable for injury,death, or loss to persons or property caused by the negligentperformance of acts by their employees with respect toproprietary functions of the subdivisions."
 {¶ 24} If a municipality decides to engage in a proprietary function, an activity that is customarily engaged in by non-governmental persons,[17] it is liable for its employees' negligence just as a private person or entity would be.[18] The City did not repair the snow plow damage to the Horvaths' lawn. It took the responsibility to merely cover the denuded seven- to eight-inch drop-off with hydromulch to facilitate the growth of grass. It admits it had actual notice of the condition then present on the premises because its employees created it by applying a diluted solution of a thick, gooey, deep green liquid "that dries in about an hour under normal conditions."[19] The City further acknowledges that "hydromulch on a tree lawn is unsafe only if someone chooses to step in it."[20]
 {¶ 25} It is a question of fact, therefore, whether the City, with knowledge that it created an unsafe condition, had a duty to advise/warn Horvath of the condition and danger it would present if encountered before it dried. It is not outside the realm of reason to be aware: that a homeowner would be mowing his lawn or walking on it after 10:30 a.m. on a warm Wednesday in April; that City employees would over-spray the hydromulch so that it covered both the grassless drop-off and abutting grass; that a homeowner would not expect the edge of his tree lawn grass to be coated with a wet, slippery greenish substance; that he would turn his mower at the edge of the grass on top of the drop-off or even proceed across it into the street; that he could lose his footing, whether mowing or not, on the wet, slippery greenish coating; and that serious injury could result from that loss of footing.
 {¶ 26} To establish actionable negligence, "the plaintiff must show the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom."[21] The City owed Horvath a duty of reasonable care when it created what it agrees was a hazard/danger on his property. "The existence of a particular party's duty `depends on the foreseeability of the injury. . . .'"[22] Both the City's duty of reasonable care and Horvath's reasonable anticipation that injury would result from normally walking on/mowing his own lawn were material facts in dispute and issues for the jury.[23]
 {¶ 27} Open and Obvious
 {¶ 28} In granting summary judgment to the City, the judge found that the hydromulch on the Horvaths' lawn was an open-and-obvious condition and, therefore, the City was entitled to "open-and-obvious" defense, specifically designed only for landowners/possessors, to defeat the Horvaths' claims. In light of our discussion, supra, the City is precluded from using this defense against the Horvaths' claims. This assignment of error has merit.
 {¶ 29} Nuisance
 {¶ 30} The Horvaths contend that the City created a nuisance when it sprayed the hydromulch on their property from which arose a concomitant duty to warn. This contention, countering the City's immunity and open-and-obvious defenses, has been addressed, supra, and is moot.
 {¶ 31} Judgment reversed and case remanded.
APPENDIX A:
 "I. THE TRIAL COURT ERRED IN APPLYING THE OPEN AND OBVIOUSDOCTRINE TO THE DEFENDANT CITY OF BROADVIEW HEIGHTS WHEN THEDOCTRINE CLEARLY APPLIES ONLY TO LANDOWNERS AND NOT THIRD PARTIESPLACING HAZARDS UPON THE LANDS OF SUCH LANDOWNERS, ANDFURTHERMORE CANNOT APPLY TO VITIATE ANY DUTY IMPOSED UPON A PARTYBY STATUTE."
 "II. THE TRIAL COURT ERRED IN FINDING THAT THE APPLICATION OFHYDROMULCH TO THE PLAINTIFF'S TREE LAWN DID NOT CREATE A NUISANCEAND THUS THE DEFENDANT WAS UNDER NO DUTY TO DISCLOSE ITSAPPLICATION TO THE LANDOWNER."
It is ordered that the appellant recover from appellee costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze Jr., J., Concurs.
Dyke, J., Dissents (see separate dissenting opinion).
[1] It is unrefuted that the Horvaths own the tree lawn, not the City.
[2] The complaint alleged "curb" while the motion for summary judgment alleged "on the last foot or two of the tree lawn."
[3] We note that the Horvaths' motion for summary judgment was never ruled on. Failure by a trial judge to rule on a motion will implicitly be considered a denial. See Akron v. Molyneaux
(2001), 144 Ohio App.3d 421, 425, 760 N.E.2d 461; Georgeoff v.O'Brien (1995), 105 Ohio App.3d 373, 378, 663 N.E.2d 1348.
[4] Civ.R. 56(C); Bonacorsi v. Wheeling Lake Erie Ry. Co.,95 Ohio St.3d 314, 2002-Ohio-2220, at 24, 767 N.E.2d 707.
[5] Horton v. Harwick Chem. Corp., 73 Ohio St.3d 679,1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus.
[6] Osborne v. Lyles (1992), 63 Ohio St.3d 326, 333,587 N.E.2d 825.
[7] Nease v. Medical College Hosp., 64 Ohio St.3d 396, 400,1992-Ohio-97, 596 N.E.2d 432.
[8] Hall v. Board of Education, Fort Frye Local SchoolDistrict (1996), 111 Ohio App.3d 690, 676 N.E.2d 1241.
[9] 83 Ohio St.3d 24, 1998-Ohio-421, 697 N.E.2d 610.
[10] R.C. 2744.02(A)(1).
[11] R.C. 2744.01(C)(2)(e).
[12] (1911), 85 Ohio St. 1, 96 N.E. 937, involving an eighteen inch strip of land protected with a wire barrier.
[13] (1975), 44 Ohio St.2d 155; 339 N.E.2d 622.
[14] 44 Ohio St. 2d at 158; 339 N.E.2d at 624.
[15] (1983), 6 Ohio St.3d 429, 453 N.E.2d 604 (an auto struck a light pole adjacent to the traveled roadway).
[16] Id. at 431.
[17] R.C. 2744.02(G)(1)(b).
[18] Brown v. Akron (Mar. 11, 1992), Summit Co. App. No. 15053, 15066, citing Zents v. Bd. of Commrs. (1984),9 Ohio St.3d 204, 459 N.E.2d 881, Syllabus.
[19] City's Answers to Interrogatories No. 11, and Requests for Admissions Nos. 2, 4.
[20] City's Motion for Summary Judgment at page 6.
[21] Texler v. D.O. Summers Cleaners, 81 Ohio St.3d 677, 680,1998-Ohio-602, 693 N.E.2d 271. (Internal Citation Omitted.)
[22] Id at 680.
[23] Id at 681.